FLAWS v. WEST BAY CITY SHIPBUILDING CO.

NEGLIGENCE— FELLOW-SERVANTS— DEFECTIVE. TOOLS—EVIDENCE.
Plaintiff, while working in defendant's shop as a puncher, was injured by the fall of a sheet of steel. He claimed that the fall was due to a nut fitting loosely to a bolt, which the foreman of the gang in which plaintiff was working obtained from the foreman of another gang. The latter had picked it up from the floor of the shop, and used it for holding up light plates. *Held*, that there was no sufficient evidence that defendant had furnished the defective tool to plaintiff for use, and the negligence, if any, was that of a fellow-servant.

Error to Bay; Shepard, J. Submitted November 19, 1902. (Docket No. 108.) Decided January 27, 1903.

Case by William Flaws against the West Bay City Shipbuilding Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

Defendant is a shipbuilder, owner of a large plant, and employs a large number of men. It manufactures and uses steel plates weighing from 150 to 1,600 pounds. It is necessary to trim these plates. For this purpose they must be raised about three feet from the ground. This process is called "punching," and those who do it are called "punchers." A punch gang consists of five men, the chief of whom is known as the "chief puncher" or "boss," or, as some of the witnesses called him, "foreman." Various methods are employed for raising the plates. The one used in this case was to put a bolt through a hole near the center of the plate, screw a nut on the end of the bolt on the under side, attach the bolt to the crane, and raise the plate. When raised, the men guide it, placing the appropriate part under the punching machine to accomplish the work. The plate in this case was one of

the heaviest in use, weighing 1,500 to 1,600 pounds. The plate had been raised and partially trimmed, when, for some reason, the nut came off the bolt, and the plate fell, the end striking the plaintiff at his ankle, and seriously injuring him.

The only charge of negligence relied upon was that the nut was too large for the bolt. The bolt was procured and identified. A nut was also produced, and claimed to be the nut then used. The eyebolt was three-fourths of an inch in diameter, and the nut produced was thirteen-sixteenths of an inch in diameter,—one-sixteenth of an inch larger than the bolt.

These punching machines, called "punches," are situated in what is called the "punch shed." There were 13 of the punches in this shed, and 3 shearing machines. The punch shed had its foreman, as also did the other shops.

One Ribble was the boss or foreman of the plaintiff's gang. When ready to raise the plate, Ribble went to one Dee, the boss or foreman of another gang, and asked for a bolt he had with a ring in it. Dee loaned him the bolt which was used. Dee had used this bolt twice to raise plates of only 150 pounds. Ribble took the bolt and nut, and, before fastening it to the plate, screwed the nut on and off, and testified that it fitted closely. Dee testified that he had had this bolt in his possession for about a month; that he had the ring put in it about two weeks before the accident; that he picked the bolt up from the floor; that he did not know how long it had been in the punch shed; and that he used it twice before the accident on very light plates. Mr. Ribble did not tell Dee how heavy a plate he was to raise. Dee had the ring put in because the eye of the bolt would not go on the hook of the chain fall. It was customary to throw the bolts on the floor after they were used. Dee did not know how long this bolt had been in use.

When the plaintiff rested his case, the court directed a verdict for the defendant on the ground that:

" There is no sufficient proof that the defendant furnished the particular tool to the plaintiff to use, or to his associates, in the condition in which it was when the injury happened. If there was any negligence, it was the act of a fellow-servant in using the tool. The foreman of the gang where the plaintiff worked went to a distant department, picked up a tool that he thought was sufficient for his purpose, such a one as had been used by the other employé for his purposes, which might be the handling of a lighter sheet of steel, but which seems to be inadequate and insufficient and unsafe for the purposes or use to which it was here put. There is some evidence also that more safety and more security could have been insured in the plaintiff and his co-employés in performing their work; but they used the eyebolt in question, and the injury resulted under such circumstances that I do not think the defendant can be held liable for the injury, and therefore your verdict will be for the defendant."

*Loranger & Flynn*, for appellant.

*Simonson, Gillett & Clark*, for appellee.

GRANT, J. (*after stating the facts*). In my opinion, the record is barren of any evidence identifying the nut produced in court and screwed upon the bolt as the one used at the time of the accident. No witness even referred to the nut. They identified the bolt solely by the ring. The nut evidently came off with great force. Six or seven hours after the accident, some one brought the bolt to the plaintiff at his house, with a nut screwed upon it. Ribble, plaintiff's own witness, and the foreman of the gang, testified that, in his opinion, the nut produced in court was not the one used, because he screwed the nut on and off, and it fitted perfectly tight, while the one produced in court was too large.

My Brethren, however, are of the opinion that the case should be affirmed for the reason given by the circuit judge in directing a verdict. We are all of the opinion that the instruction was correct. The declaration, besides alleging as negligence that a bolt of insufficient size was used, also alleges that the threads of the bolt were badly

worn, were weakened by work and use, and that the defendant's employé in charge of its toolhouse gave out to its workmen this bolt of 'insufficient 'size. Either defect might produce the result, but that of insufficient size is alone relied upon. Bolts and nuts of different sizes were used in the defendant's plant. The theory of the plaintiff is that this bolt was in good condition for use with a proper nut, and the nut was in good condition for use with a proper bolt; that some employé made a mistake in selecting the one or the other, and for this mistake the employer is liable. 'Dee had this bolt fixed to accommodate himself in raising light weights, and selected the nut. Mr. Ribble borrowed it to raise a weight nearly equal to the full tensile strength of a nut and bolt properly fitting each other. It required no great skill to determine whether the bolt and nut corresponded in size, and plaintiff's foreman and fellow-servant made a careful examination, and determined that they did. Defendant was under no obligation to keep a man in each room of its establishment to see that its employés used the proper tools. It had furnished safe tools and competent workmen to select and use them, and had thus performed its full duty towards its employés. *Wachsmuth* v. *Electric Crane Co.*, 118 Mich. 275 (76 N. W. 497). If there was negligence, it was that of a fellow-servant.

Judgment affirmed.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred with GRANT, J. MOORE, J., concurred in the result.