OLSON, Appellant, vs. DOHERTY LUMBER COMPANY, Respondent.

*February 1 — February 21, 1899.*

*Master and servant: Injury from defective appliances: Proximate cause: Assumption of risk.*

1. While attempting to remove, with the aid of an iron hook, a blockade of timbers and slabs upon a roller bench in a sawmill, a slab sawyer was injured through the slipping of his hook from a timber, causing him to step back so as to come in contact with the slab saw. The blockade was caused by a short slab — too short to be carried over the rollers — upon which other timbers lodged. The employer had promised to put two additional live rollers in the bench, which would have moved the timbers further along the bench, but would not have prevented a blockade such as that in

Olson vs. Doherty Lumber Co.

question. *Held*, that the failure to furnish such additional rollers, not being the producing cause of the blockade, did not render the employer liable for the injuries.

2. The hook with which the plaintiff was attempting to remove the timbers being a simple contrivance, easily comprehended, as to all the dangers of its use, by any person of ordinary intelligence, and being entirely in plaintiff's care, he assumed the risk, if any, arising from the fact that its end was straight instead of curved and was not sharp.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action to recover for personal injuries. The allegations of the complaint cover facts which were established on the trial, or which there was evidence tending to prove, as follows:

Plaintiff was injured while in the employ of defendant as a slab sawyer in a sawmill. There was a roller bench fifty-six feet long, three and one-half feet wide, and three feet high, so located, for part of its length, by the side of the carriage track of a band saw used in manufacturing logs that the manufactured material would readily pass as fast as severed from the log to such bench and be conveyed away on rollers to points where it was taken from the bench according to its kind, the lumber being taken off nearest the saw, the edging going to near the end of the bench, and being there taken off on one side into what was called a "slasher," the slabs to about the same point where they were taken off on the other side onto a slab bench and cut into four-foot lengths, and square timber going to the end of the bench where it was taken off by a person located there, ordinarily, for that purpose. Seven live rollers were located crosswise of the roller bench about four feet apart, commencing at the end nearer the saw, and there were similar rollers, except they were not live, all the way to the outer end of the bench. The slab bench was at the side of the roller bench, and about half the length of it, commencing

at the outer end. Nearest the band saw the surface of the slab bench and roller bench about coincided; but the former inclined towards the slab saw, which was about six feet from the outer end of the bench, so that when the saw was reached the surface of the slab bench was about one foot lower than that of the roller bench. There were dead rollers in the surface of the slab bench, similar to those in the roller bench, so that slabs would pass easily down the incline towards the slab saw.

As stated, the slab saw was about six feet from the outer end of the slab bench. It operated at right angles with such bench, there being a slit crosswise of the surface, six or seven inches wide, back of which a movable saw frame was located and adjusted so as to be nearly or wholly back of the slab bench and under the roller bench when the saw was running idle, but could be moved forward wholly into the slit in the slab bench as necessary in sawing up slabs. There was an iron handle attached to the saw frame, extending about six inches above and over the slab bench when the saw was swung back under the roller bench. Though the saw was designed to go back entirely clear of the slab bench when running idle, there was evidence tending to show that, at times at least, it did not go wholly back. There was nothing about the location of the saw or its surroundings that made the work of the slab sawyer unusually dangerous when he was operating it. In such work, the sawyer stood by the side of the bench in a boxed depression in the surface of the floor so that his feet were several inches below such surface. When a slab was in place over the slit, the sawyer, by taking hold of the handle mentioned, would pull the saw forward till it engaged and cut the slab in two. Then, by slightly pushing back on the handle, the saw would recede to its place under the roller bench.

Plaintiff had an assistant and each was furnished with an iron tool about sixteen inches long with a hook end about

two inches long, pointed, and bent at about right angles with the handle. The hooks were used for pulling the slabs from the roller bench to the slab bench, and generally to facilitate moving slabs and other material that came down the roller bench. Sometimes short slabs were liable to get into such positions on the roller bench as to allow timbers to run upon them and cause a blockade, and in that situation plaintiff and his assistant were obliged to go upon the slab bench, pick out the slabs, and straighten the timbers, and push them along to the end of the roller bench. When timbers came down they would stop as soon as clear of the live rollers. In that situation it was necessary for plaintiff and his assistant, one or both of them, to go upon the slab bench and move the timbers along by using the hooks. Two additional live rollers would have lessened, or obviated entirely, the necessity for going upon the slab bench to do that kind of work under the circumstances mentioned.

About five days before the injury, plaintiff complained to defendant of the dangers attending his work because of the necessity of going upon the slab bench as indicated, and defendant promised to remedy the difficulty by obtaining a proper sprocket chain so as to operate two additional live rollers. Within a reasonable time after such promise was made, the injury occurred, and in this wise: A short slab was placed on the roller bench,— too short to go over the rolls. A timber lodged on the slab, a second timber came down and lodged on that timber, and a third, coming partly crosswise of the bench, lodged on the two other timbers, forming a complete blockade. There were slabs under both of the first timbers mentioned, and slabs behind the timbers. The first timber was down to within about four feet of the slab saw and about eight feet clear of the live rollers, it having been shoved to that point by timbers or material behind it. Plaintiff and his assistant went upon the slab bench to clear the blockade. Plaintiff struck his hook into one of

the timbers and pulled as hard as he could, stepping backward at the same time towards the slab saw. At the second step his hook let go of the timber, causing him quickly to take a third step, when his foot and limb went down into the slit in front of the slab saw, whereby, either by reason of the saw being partly out into the slit, or plaintiff's touching the saw handle and moving the saw toward him, it engaged his leg and seriously injured him.

Plaintiff appreciated fully the danger of doing the work in which he was engaged, but subjected himself thereto so far, as before indicated, relying upon the promise of defendant to add the two additional live rollers to the roller bench. There was evidence tending to show that if plaintiff's hook had been curved at the end instead of straight, and not been so blunt, it would have been less liable to slip. He had the entire care of the hook and it was his duty to keep it sharp, which he did, from time to time, by filing it.

At the close of the evidence the court, on motion of defendant's counsel, directed a verdict in defendant's favor. Judgment was rendered on the verdict, from which this appeal was taken, proper exceptions having been made to preserve for review the question whether the case should have been submitted to the jury.

For the appellant there was a brief by *Cate, Sanborn, Lamoreux & Park,* attorneys, and *Arctander & Arctander,* of counsel, and oral argument by *John W. Arctander.*

For the respondent there was a brief by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

MARSHALL, J. The only reason suggested by appellant why the court should have submitted this case to the jury, which seems seriously urged on the appeal, or worthy of consideration on the record, is that defendant was guilty of a breach of duty to plaintiff is not furnishing two additional live rollers in the roller bench, and while plaintiff was

relying on defendant's promise to remedy such breach of duty the injury occurred, and that such breach was the proximate cause of it. It is conceded that the bench was blockaded with timbers and slabs, and that plaintiff was engaged in obviating that difficulty when he received his injury. Now, unless the blockade, which was the immediate cause of plaintiff being placed in the position of danger, was caused by the failure of defendant to add the two additional live rollers to the roller bench, and was an event which defendant had reasonable ground to believe was liable to occur as a result of such failure, then, even though there was such failure, it cannot be said to have been the proximate cause of the injury complained of.

It follows necessarily that, unless there be evidence in the record from which a jury would have been warranted in saying that the want of two additional live rollers was the producing cause of the blockade, no other question need be considered, for that would fully justify the action of the trial court in taking the cause from the jury.

The evidence appears to show beyond reasonable controversy that a short slab,— too short to be carried over the rollers,— dropped down and lay in such a position that a timber ran upon it and stopped just after leaving the live rollers, and that other timbers and slabs came down and lodged on the first, so that the bench was completely blockaded thereby. Such being the facts, clearly the failure to have two additional live rollers had nothing whatever to do with the difficulty which caused plaintiff to place himself in the position of danger. It would have occurred just the same, though perhaps a little further down the table, if there had been two more live rollers. Plaintiff testified that the blockade was caused by a short slab being placed on the rollers, and that the head timber was pretty well down to the slab saw. He did not pretend to say where the short slab came from, but suggested that it might have been

Olson vs. Doherty Lumber Co.

placed on the rollers by some person who carried it over from the rotary saw. His language is: "The slab was pretty short, and sometimes they carried the slabs over from the rotary saw, and put them on the roller bed just when they let the timber come down from the carriage, and the timber would catch these short slabs and run upon them. I am certain the slab furthest down on the roller bench at the time I was hurt was a short one. I should think it was about four feet long. I don't know whether that short slab came from the rotary saw or the band." Again he said: "The piece of timber came down from the band saw and there was a slab in front of the first timber, and there was a slab behind the other timber." The witness illustrated by using some sticks and a model of the roller and slab bench, and said further, in substance: One of the timbers came down to within three feet of the slab saw and had a short piece of slab under the end of it so as to prevent its being moved forward without much manual exertion. According to the illustration made by the witness, the three timbers lay one over the other, the third being crosswise of the roller bed. He further testified: 'The effect of two additional live rollers would have been to have moved the timbers further along. The timbers would stop as soon as they left the live rollers, and sometimes a little before, without any obstruction in the way.' Plaintiff was corroborated by other witnesses. The testimony tended to show that two additional live rollers, under ordinary circumstances, would have moved timbers further down the roller bench, but would not have obviated the danger of a blockade being formed as the one in question was formed. The timbers were short and would have piled up and obstructed the bench, under the circumstances, regardless of whether there were two more live rollers or not. We find nothing in the evidence connecting the difficulty with the breach of duty complained of, in regard to want of additional live rollers.

In going back from the instant of the injury to the producing cause of it, the causal connection is lost, or rather stops at the blockade, if not at the circumstance of the hook slipping from the timber.

Some suggestion is made that the accident may be attributed to actionable negligence in respect to the character of the hook that was furnished plaintiff; that if it had been some longer, or the hook end had been curved instead of straight, and not been so blunt, the accident would not have occurred. The answer to that is that the hook was one of those simple contrivances, so easy of comprehension, as to all the dangers of its use, by any person of ordinary intelligence, even if it were defective in the respects suggested, that actionable negligence of the employer cannot be based on the fact of its being furnished to the employee for use in the performance of his work. In such circumstances, it is presumed that reasonable attention by the employee to those matters which are open, obvious, and easily comprehended by any ordinary person of mature years, will disclose to the employee all the dangers of using the defective contrivance, and he is therefore conclusively presumed to have assumed such dangers as a part of his contract of employment. *Borden v. Daisy R. M. Co.* 98 Wis. 407; *Holt v. C., M. & St. P. R. Co.* 94 Wis. 596.

It follows from what has been said that the verdict was properly directed in defendant's favor, and that the judgment entered thereon should be affirmed.

*By the Court.*— Judgment affirmed.