MEYER, Respondent, vs. LADEWIG, Appellant.

*January 12—January 29, 1907.*

*Master and servant: Injuries from simple tools: Duty to inspect:*
*Instructions to jury.*

1. A machinist's hammer is a simple tool, and no duty of inspection
rests upon the master in respect thereto.
2. The rule that a master is not obliged to inspect a simple tool
rests upon the assumption that the servant is in as good, if not
better, position to observe any defects as the master.
3. In an action against a master to recover for injuries received by
a servant and caused by a splinter of steel flying from a ham-
mer used by the servant, striking him in the eye and causing
loss of sight, the court instructed the jury that ordinary care
on the part of the master required reasonable inspection by
him of the tools and appliances furnished by him to ascertain
whether or not they were in a reasonably safe condition for
use. *Held*, the hammer being a simple tool, that the instruc-
tion was erroneous.

APPEAL from a judgment of the circuit court for Wauke-
sha county: E. B. BELDEN, Judge. *Reversed.*

This action was brought to recover damages alleged to have
been sustained by plaintiff in consequence of injuries received
by a splinter of steel flying from a hammer, striking him in
the eye and causing loss of sight. The charge of negligence
is that the defendant furnished his employees with all tools,
machines, and other appliances necessary for carrying on the
work; that it became the duty of plaintiff to assist other em-
ployees in making repairs upon a boiler, and that such re-
pairs consisted in the removal and replacing of certain flues;
that it was necessary to perform this work in the nighttime,
plaintiff being directed by defendant to assist in the work;
that to perform such work hammers of certain shapes, weights,
and temper were required; that plaintiff was furnished by
too hard and brittle, in consequence of which a piece of steel
defendant with a hammer which was improperly tempered

☞ The corrected lines here given should be pasted in place in 130 Wis.:

[Page 566, last two lines.]

defendant with a hammer which was improperly tempered
too hard and brittle, in consequence of which a piece of steel

flew off the same while plaintiff was using it and destroyed the sight of his right eye; that the hammer should have been annealed in order to make it safe for such use; and that plaintiff did not know this, and defendant did. The answer put in issue the material allegations of the complaint, and alleges that the hammer was made by a competent toolmaker and had been used constantly by defendant for many years; that its condition was obvious to any one using it, and that the accident was caused by the manner of using rather than by its condition; and that plaintiff was guilty of contributory negligence. Upon the trial a special verdict was found by the jury as follows:

"(1) Was the hammer used by the plaintiff at the time of his injury reasonably safe for the use to which it was put by him at that time? A. No. (2) If you answer the first question 'No,' then was the defendant guilty of negligence in furnishing said hammer to plaintiff for the purpose of doing the work that plaintiff was directed to do at the time in question? A. Yes. (3) If you answer the second question 'Yes,' then was such negligence the proximate cause of plaintiff's injury? A. Yes. (4) Was the plaintiff guilty of any want of ordinary care which contributed to his injury? A. No. (5) In what sum do you assess plaintiff's damages sustained by reason of the injury complained of? A. $5,000."

The usual motions were made on behalf of the defendant, which were overruled and judgment entered upon the verdict in favor of the plaintiff, from which this appeal was taken.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

KERWIN, J. The plaintiff at the time of the injury was twenty-eight years of age and had been in the employ of defendant for about four years, having learned his trade as machinist of defendant. When injured he was at work put-

ting flues in a boiler. He did some work with a light hammer of his own and afterwards called for a heavier one, which was given him by one of the employees, and which he was using when injured. The work was being done in the nighttime by the light of a candle. In putting in the flues it was necessary that the ends should be rolled out. For this purpose an iron instrument, known as a rolling pin or flue roller, was inserted in the end of the flue and the outer end struck with a hammer, the effect being to make the flue water-tight. The plaintiff was working at the end of the boiler in a space four feet two inches by two feet three inches and seven feet high, driving in the flues, when a splinter flew from the hammer he was using, causing the injury. When injured he was standing in a cramped position, owing to lack of room, and striking a left-hand blow with both hands upon the rolling pin, which was sticking out about nine inches, so that there was not much room between the wall and the rolling pin after it was in the flue. The plaintiff testified:

"There isn't much room between the wall and the rolling pin after it is in the flue to strike a big square blow. You have to cramp your hammer around to get any force on it."

After the accident it was found that there were about ten chips out of the edge of the striking face of the hammer, and only two of them appeared to be fresh or recently broken out. There is evidence that the chipping might be caused by striking an unsquare or glancing blow or by the hammer or roller being too hard; that if a hammer was too hard it could be remedied by annealing; that it would be impossible to tell by looking at this hammer whether it was too hard or too soft; that plaintiff had worked many times in the night on the same kind of work with this hammer, it having been in use there for several years; that whether this hammer was too hard could only be discovered by using a file on it, and upon testing it the morning after the injury it was found to be hard; that constant pounding will cause hammers to grow harder; that the work required a hammer pretty hard, just hard

enough so a file would cut it; and that such a hammer would be liable to chip if struck with a glancing blow. There is no evidence of any actual knowledge on the part of the defendant that the hammer was too hard or in any way defective or unsafe.

But it is claimed on the part of the plaintiff that it was the duty of defendant to inspect, and the case was tried and submitted to the jury upon that theory. So the main and controlling question is: Did the duty of inspection rest upon the defendant? If the hammer was a simple tool there was no such duty. In *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 322, 106 N. W. 843, this court said:

"Another qualification of the master's liability indulged in case of such simple tools and appliances is exemption from a duty to inspect to ascertain the development of defects or disrepair in the course of their use, based also upon the assumption that such conditions are as much within the observation of the employees as of the master, if not more so."

In the above case the tool in question was a monkey wrench, which appears to be more complicated in its construction than a hammer, and the liability of the master was based upon actual knowledge brought home to him of the defects, and it was held that, while the rule was relaxed so as not to make a master liable in case of failure to inspect, he was nevertheless liable when he had actual knowledge of the defect. It would seem that an ordinary hammer is one of the most simple of tools.

"There is no complication about a hammer. It is not a piece of machinery which requires any attention whatsoever to keep in order. It cannot get 'out of fix,' unless the handle breaks. It requires neither art, science, nor skill in its use; brawn and muscle do the work, and it is known to be one of the most harmless of all tools to the person using it. Should a flaw or other patent defect exist, it would more certainly appear to the person undertaking to work with it, whose duty it would be to make it known to his employer." *Martin v. Highland Park Mfg. Co.* 128 N. C. 264, 265, 38 S. E. 876.

But it is insisted that the hammer in question was not an ordinary hammer, that the handle was short so as to admit of use in cramped quarters, and that it should be of a certain temper, neither too hard nor too soft—just hard enough so a file would take hold of it. Clearly the length of the handle did not render the tool complicated or even difficult to understand. And it appears from the evidence that a blacksmith's hammer with a short handle would do the work. The hammer was put in evidence and is before this court. It is such as is usually found in machine shops, and it shows chips out of the edge of the face, which, as the evidence shows, might have been caused by striking an unsquare or glancing blow. About ten of these chips were out, and obvious to any one using the hammer before the accident. Plaintiff used it off and on at the same kind of work for a period of two years before the injury. He was a machinist, and doubtless no one was in better position than he to know whether it was too hard. The rule that a master is not obliged to inspect simple tools rests upon the assumption that the servant is in as good, if not better, position to observe any defects as the master. *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 322, 106 N. W. 841; 1 Labatt, Master & Servant, § 154; *Garnett v. Phœnix B. Co.* 98 Fed. 192; *Dompier v. Lewis,* 131 Mich. 144, 91 N. W. 152; *Webster Mfg. Co. v. Nisbett,* 205 Ill. 273, 68 N. E. 936; *Georgia R. & B. Co. v. Nelms,* 83 Ga. 70, 9 S. E. 1049; *Cregan v. Marston,* 126 N. Y. 568, 27 N. E. 952; *Wachsmuth v. Shaw E. C. Co.* 118 Mich. 275, 76 N. W. 497; *Hefferen v. N. P. R. Co.* 45 Minn. 471, 48 N. W. 1, 526; *Rawley v. Colliau,* 90 Mich. 31, 51 N. W. 350; *Martin v. Highland Park Mfg. Co.* 128 N. C. 264, 38 S. E. 876; *Marsh v. Chickering,* 101 N. Y. 396, 5 N. E. 56; *Lynn v. Glucose S. R. Co.* 128 Iowa, 501, 104 N. W. 577; *Louisville, E. & St. L. C. R. Co. v. Allen,* 47 Ill. App. 465; *Koschman v. Ash* (Minn.) 108 N. W. 514; *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191, 51 N. W. 328;

*Borden v. Daisy R. M. Co.* 98 Wis. 407, 74 N. W. 91; *Olson v. Doherty L. Co.* 102 Wis. 264, 78 N. W. 572; *Relyea v. Tomahawk P. & P. Co.* 110 Wis. 307, 85 N. W. 960. In *Relyea v. Tomahawk P. & P. Co., supra,* this court said:

"These perils were plain before his eyes. He must be deemed to have accepted them and assumed the risk. If, on the other hand, those perils had developed in the natural course of the use of the appliances by himself and his companions, failure to observe them would be quite as inconsistent with due care on his part as on the part of any representative of the employer, for the very use he made of them, namely, the opening and closing of the board and stepping thereon in the course of his work, was obviously the surest means of discovering such defects as are now claimed to have existed."

In many of the above cases it was held that a hammer is a simple tool, and some of them are very similar in facts to the one before us. Others are similar in principle. We think the cases cited by respondent generally can be differentiated from the instant case. The question whether the hammer was defective in its construction or when furnished by the master was not tried. The question litigated and passed upon by the jury was whether it was reasonably safe at the time of the injury, and the jury were told that ordinary care on the part of the defendant required "reasonable inspection by the master of the tools or appliances to ascertain whether or not they are in a reasonably safe condition for such use." We think the weight of authority and the better reason bring the hammer in question within the category of simple tools, and therefore, if it was reasonably safe when furnished and free from obvious defects, the law imposed no duty upon the master to inspect. Of course the rule is too well settled to require discussion that the master must furnish reasonably safe tools and implements, and the question whether he did so in this case seems to have been lost sight of in the effort to prove that the tool was not safe at the time of the injury and

that defendant was guilty of negligence because he did not inspect. There is no evidence of custom to inspect in the case before us. The hammer was furnished to the plaintiff at least two years before the injury. There were no obvious defects when furnished. A toolmaker was provided to whom tools were taken by the servants for repair when necessary. We shall not prolong this opinion by a review of the many authorities cited by counsel for respondent nor by a discussion of the questions raised and argued. It is frankly conceded that if the hammer is a simple tool, as we hold it is, the charge to the jury was erroneous.

Other errors discussed need not be considered, since the questions presented by them are not likely to arise upon another trial. It follows from what has been said that the judgment of the court below must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.