GIBSON, Appellant, vs. MILWAUKEE LIGHT, HEAT & TRACTION COMPANY, Respondent.

*November 15—December 6, 1910.*

*Master and servant: Defective materials furnished for servant's use: Duty of inspection: Negligence: Proximate cause: Evidence: Expert testimony: Cross-examination.*

1. Where a master buys of reputable dealers material of a standard make (in this case fuse for exploding dynamite) to be used by a servant in the course of an employment which renders it more likely that the servant will seasonably discover defects than that the master could do so by any reasonable inspection, no duty devolves upon the master to inspect such material before turning it over to the servant for use.

2. Where in such a case no inspection which could be required of the master would have been likely to disclose any defect in the material, it cannot be held that the master's failure to inspect was the proximate cause of an injury to the servant resulting from such a defect.

3. Where an inspection would in all probability not have disclosed any defect in the material, and it is wholly a matter of conjecture whether the injury to the servant was or was not the result of any defect, no actionable negligence of the master is shown.

4. A question asked of an expert witness as to the appliances ordi-
narily used in doing certain work under conditions with which
he had had little or no experience, was properly excluded.

5. A question which has for its object the breaking down or weaken-
ing of the witness's direct testimony is proper cross-examina-
tion.

APPEAL from a judgment of the circuit court for Jefferson
county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Action for personal injuries. Plaintiff was a man about
forty-four years old who had been accustomed to handle dyna-
mite and do blasting work at different times during a period
of about twenty years. In January, 1908, the defendant was
engaged in the construction of a line of railroad adjacent to
the city of Watertown, and it employed the plaintiff to dyna-
mite upon its right of way in order that the frozen ground
might be loosened and graded for its roadbed and track. It
appears that plaintiff, on the 2d day of January, in perform-
ance of his said service, had loaded six charges of dynamite
into as many holes, which were three feet apart, drilled in the
ground for that purpose; that he thereupon, by means of a
single tape fuse attached to the dynamite stick, caused said
dynamite to explode, placing himself at a safe distance of
from 300 to 350 feet from the holes containing the dynamite
charges; that after waiting about ten or twelve minutes, dur-
ing which time five of the charges had exploded, he returned
to the hole that held the sixth, unexploded charge, and as he
stepped within ten or twelve feet of the hole the dynamite ex-
ploded and he was seriously injured.

At the close of the plaintiff's evidence, on motion of defend-
ant the court ordered a judgment of nonsuit, from which
plaintiff appealed.

For the appellant there was a brief by *Davies, Mulberger
& Lueck,* attorneys, and *Aylward, Davies, Olbrich & Hill,* of
counsel, and a reply brief by *Aylward, Davies, Olbrich & Hill,*
and oral argument by *J. E. Davies.*

For the respondent there was a brief by *Van Dyke, Rose-*

*crantz, Shaw & Van Dyke,* and oral argument by *Clarke M. Rosecrantz* and *James D. Shaw.*

VINJE, J.   1. The only negligence claimed by plaintiff's counsel upon the oral argument that defendant was guilty of, was in furnishing plaintiff defective fuse.   It was contended that it may have been defective either because it was defect-ively made, so that there was a break in the continuity of the powder train, or because it had become damp and the powder was caked, and that either defect may have caused a delayed explosion.   The further claim is made that it was the duty of the defendant to inspect the fuse and discover these defects.

It is conceded by plaintiff that, as to dampness, the fuse was in good condition when it was delivered to the defendant. It appears from the evidence that the fuse was bought from the A. H. Gardner Company of Milwaukee, and that the defendant stored it in a house in which dry sand was kept for the use of its cars.   When needed at the different camps it was taken there either on open or closed cars or by wagon. The last order for fuse filled from the storehouse was December 17th, or about two weeks before plaintiff was injured. At about 9 o'clock on the morning of the accident the plaintiff was given two coils of fuse of 100 feet each, which he at once put in a dry box in the shed where the dynamite was kept. It does not appear just where the fuse had been kept previous thereto.   The plaintiff says that Finnerty, the foreman, brought it to camp that morning.   At about noon plaintiff went back to the dynamite shed, took a coil of fuse, cut off six eighteen-inch lengths, slit open one end about an inch to make a little pocket for the powder to lie in so that it would light more readily, placed the other end inside the cap, and inserted fuse and cap in a hole made in the dynamite, then put the dynamite and fuse into the hole in the ground, tamped earth around them, leaving the end of the fuse with the pocket exposed ready for lighting.   In doing this, plaintiff testified

that he observed nothing wrong about the fuse; that the powder was dry; that he did not think the fuse was damp when he got it; that wet spots could not be noticed from the surface; that the only way it could be discovered whether or not it was damp was by cutting, and that then it could be ascertained only from the powder exposed by the cutting.

The evidence fails to disclose any negligence on the part of the defendant in buying, storing, or distributing the fuse. But it is strenuously insisted that defendant was negligent in failing to make a proper inspection thereof before turning it over to the plaintiff. Where a master buys of reputable dealers a standard make of material to be used by a servant in the course of an employment that renders it more likely that he will seasonably discover defects therein than the master by any reasonable inspection he could make, then no duty devolves upon the latter to inspect such material before turning it over to the servant for use. This is on the familiar principle that there is no duty to inspect where the servant is in as good a position to seasonably discover defects as is the master. *Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419; *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059. But, conceding that it was the duty of the defendant to make a reasonably vigilant inspection of the fuse, still it is difficult to conceive how an inspection could have been made that would have disclosed any defect therein. It could not have been cut into shorter lengths, for that would have rendered it useless, and wet spots could not have been detected without cutting. There is some evidence tending to show that a defective construction resulting in a break in the powder train may be discovered owing to a slightly diminished diameter. But the testimony is vague and unsatisfactory. The plaintiff in his manipulation of the fuse that morning discovered no such defect. He had used fuse and dynamite for over twenty years, and must, during that time, have acquired unusual skill and aptitude in discovering anything wrong about ma-

terial he used.   He discovered nothing after all the handling
to which he subjected each piece of fuse.   No more severe or
minute inspection could be required of the defendant, and no
person more skilled than plaintiff to discover defects could it
be required to employ.   That being so, it follows that no in-
spection required of the defendant would have been likely to
disclose any defect in the fuse, if one did exist, and therefore
its failure to inspect could not be the proximate cause of the
injury.

It appears from the evidence that, in addition to the causes
of defective manufacture and dampness, an improper manipu-
lation of the fuse resulting in a break in the continuity of the
powder train, or a faulty insertion of it into the cap, might
cause a delayed explosion.   We have, then, not only a situation
in which an inspection would in all probability not have dis-
closed a defect in the fuse if one had existed, but also a situation
where it is a matter of conjecture as to whether or not the de-
layed explosion was the result of any defect whatsoever in the
fuse.   It may have resulted from the acts of the plaintiff him-
self.   No one can make more than a guess as to what its cause
was, and several guesses equally plausible may be indulged
in.   There is no reasonable certainty that any one suggested
cause was in fact the cause of the delayed explosion.   Its real
cause lies wholly in the field of conjecture, and is as likely to
be found outside of the sphere of defendant's duty as within
it.   Hence no actionable negligence can be predicated thereon.

Having arrived at the conclusion that no negligence on the
part of the defendant was shown that could be held to be the
proximate cause of the injury, the question of plaintiff's al-
leged contributory negligence and the question as to whether
or not sec. 1816, Stats. (1898), applies to defendant's inter-
urban electric railway become immaterial.

2. Plaintiff alleges that the trial court committed error in
sustaining an objection to this question asked of the expert
witness, Lane: "What kind of tape, single or double, is ordi-

narily used in surface work, blasting rock or frozen ground, in the month of December and latter part of December and January, or in the winter months in this part of the country?" The testimony showed that the witness had very little experience in surface blasting and none in the section of the country referred to by the question. The court therefore properly sustained the objection.

The witness Gardner, who was a member of the company from which the defendant bought the fuse, was called by the plaintiff, and a part of his direct testimony was to the effect that the fuse was in good condition when it was delivered to the defendant. Defendant's counsel upon cross-examination asked him how the fuse was taken from the railway freight depot to his place of business—whether in open or closed wagons. Plaintiff's counsel objected to the question on the ground that it was not proper cross-examination, but the objection was overruled by the court. The evidence sought to be elicited might tend to show that the fuse was not properly handled in its delivery from the railway station to the warehouse of the A. H. Gardner Company, and therefore that it was not in good condition when delivered to the defendant. In other words, defendant's counsel by his cross-examination sought to break down or weaken the effect of the witness's direct testimony. This was manifestly proper, and the ruling was correct.

The other errors relied upon by plaintiff as to exclusion of evidence relate to testimony offered by him to show that he was not guilty of contributory negligence. The exclusion of such evidence becomes immaterial in view of the fact that the question of contributory negligence itself is not material in the case.

*By the Court.*—Judgment affirmed.