RUCK, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*March 12—April 8, 1913.*

*Master and servant: Injury: Employers' Liability Act: Railroads: Interstate commerce: When servant is employed therein: Shop and office employees: Contributory negligence: Simple tools: Constitutional law: Foreign laws: Evidence.*

1. As regards appliances and instrumentalities used by a common carrier in the business of transportation, it is the use to which it is put at the time, rather than the nature of the instrumentality itself, which determines whether or not it is employed in interstate commerce.

2. Where such an instrumentality (in this case a boiler constituting part of the equipment of a wrecking train), at the time repairs are being made upon it, is not being used to facilitate interstate commerce, but is being repaired to make it ready for either interstate or intrastate use as occasion may require in the future, an employee engaged in making such repairs is not employed in interstate commerce within the meaning of the federal Employers' Liability Act.

3. The words "employed by such carrier in such commerce," as used in said act, mean employed directly in transportation or in some act directly facilitating transportation.

4. It is within the power of a state to regulate the relation of master and servant, where both are within the jurisdiction of the state and the contract of employment is made therein, and to fix (as is done by sec. 1816, Stats.) the liabilities as between them with respect to negligent injuries arising out of or incident to such contract of employment, whether occurring within or without the state, provided the employee so injured without the state is there on the business of the employer and pursuant to the contract made in this state.

5. "Employees working in shops and offices," to whom the provisions of sec. 1816, Stats., are declared not to be applicable, include all of the class employed for shop or office work, although outside of the shop or office at the time of the injury.

6. When the decisions of another state are offered in evidence to prove the law of that state, the point decided is what is proven as law, and not the matters advanced by way of argument or illustration.

7. Plaintiff, a boiler maker, and two other employees of defendant were engaged in repairing a boiler at night, and for the purpose of cutting rivets were using a steel punch having a handle like a hammer, and a sledge of ten or twelve pounds weight. Plaintiff first handled the sledge and then changed work with one of the others and held a light some two or three feet away. The head of the punch was somewhat battered, and in using it a burr flew off and struck plaintiff in the eye. The jury found that he did not know of the defects in the punch and that he was not guilty of contributory negligence. *Held*, that while the punch was simple in form, it was not simple with reference to its resisting qualities or with reference to the results of using it with the end battered or burred; and it could not, under the circumstances stated, be said to be a simple tool.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Van Alstine.*

For the respondent there was a brief by *Rubin & Zabel,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

TIMLIN, J.    The defendant is a railroad corporation of Wisconsin, and the plaintiff was in its employment as a

boiler maker at its shops at Milwaukee, Wisconsin.    Obedient to instructions from defendant, the plaintiff went to Galewood, Illinois, for the purpose of assisting in repairing a boiler and with intention to return to his work at Milwaukee when the Galewood task was completed.    This boiler had been attached to and used in operating a derrick or hoist fastened on a flat car, and this car so equipped was used as one car of a wrecking train.    This car was generally housed in one of the stalls of the roundhouse at Galewood, ready for service on short notice, and there is always an engine near by with which to take the wrecking train to its destination.    The wrecking train consisted of this locomotive, one or more flat cars, this hoist or derrick car, and a bunk car.    A bunk car is like an ordinary box freight car containing beds or bunks, a stove, and other furnishings.    This wrecking train carried also various appliances necessary and convenient for salvage of passengers or goods, removing wreckage, replacing derailed cars or engines, etc.    The wrecking train was subject to orders and was used mostly in the state of Illinois, and, when required by reason of a wreck, also in the states of Iowa and Wisconsin, depending of course upon the place of disaster. The men constituting the wrecking crew sleep in the bunk car and frequently remain there three or four days at a time.    At the time plaintiff was sent to Galewood to repair this boiler the boiler had been taken off the flat car and lay near it in the roundhouse.    Plaintiff with other boiler makers went to work on this boiler cutting off rivet heads.    They used for this purpose a sledge and a hammer-shaped implement called a punch or drift hammer, being a cross-head four or five inches long, of about two inches diameter on the large end and round, and of three fourths of an inch diameter at the small end, having a handle like a hammer.    The small end of this punch was placed against the rivet, one man holding the handle while another struck with a sledge on the larger end of the punch.    After the plaintiff used the sledge awhile

another workman took the sledge, and while a third was holding the punch the plaintiff held an electric light near by, the work being done at night. At one of the sledge strokes a piece of steel flew from the punch and struck the plaintiff in the right eye, causing the loss of that eye. The punch was discovered to be burred or rolled back on the large end, and a piece of steel was found which was considered to be that which struck plaintiff in the eye, and it fitted into a cavity or break in this burr. Experts testified that continued striking of a punch causes the steel to harden, crystallizes it, makes it brittle, and has a tendency to cause the breaking of the burrs, the pieces of which sometimes fly with great force; that when such a tool commences to show signs of burring it should be reforged or reground and the burred head removed and the end of the tool brought down to its proper size; that a tool of this kind should not burr at all.

A special verdict was submitted whereby the jury found that the punch was defective and this was due to a want of ordinary care on the part of defendant, and was the proximate cause of plaintiff's injury. The plaintiff at the time of the accident did not know that there were burrs on the head of the punch nor was he guilty of contributory negligence, and his damages were $4,000. On this verdict the plaintiff had judgment.

The complaint in its first count or cause of action seemed to proceed on a common-law liability, on its second count or cause of action expressly under sec. 1816, Stats., and in the third count or cause of action expressly under the Employers' Liability Act of Congress. There was an oral objection to the reception of any evidence under each of the several causes of action, which was overruled. The third cause of action was added by amendment against the exception and objection of defendant. The defendant moved for a nonsuit on the ground that the proof did not bring the case within the federal Liability Act and the motion was denied.

The appellant contends in this court that neither the pleading nor the evidence in the case warrants a recovery under the federal Employers' Liability Act of April 22, 1908 (35 U. S. Stats. at Large, 65, ch. 149). The portion of that statute relevant to this inquiry is contained in sec. 1 and is as follows:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The statute applies with larger scope to the carrier than to the employee. The former is brought within the purview of the statute if the described injury occurs while, i. e. during the time, it is engaging in interstate commerce. The defendant was within the purview of this statute. The question here is, Was the plaintiff at the time of his injury employed in interstate commerce? Commerce includes sale or barter, with numerous incidents thereof, communication, also transportation of passengers or goods. That constituent or incident of commerce in which a common carrier is engaged as such is transportation, and this statute relates, therefore, to employment in transportation of goods or passengers. Most appliances or instrumentalities used in transportation are of such nature that they may be used in intrastate or domestic commerce or in interstate commerce, and are put to one use or the other at the direction of the possessor, as his interest or duty may require. When put to a use directly facilitating interstate commerce, they are instrumentalities of that commerce. It follows that the use to which the appliance is put rather than the nature of the appliance must be considered. Otherwise all railroad cars would be at all times instrumen-

talities of interstate commerce no matter how used.  These
appliances require construction and repair.  The construc-
tion or repair is performed to fit the appliance for either use.
A foundry making or repairing car wheels which are to be
put on cars which may be used in either kind of commerce
could not correctly be said to be engaged in interstate com-
merce nor its employees said to be employed in such com-
merce.  It could hardly be said that a steamfitter who con-
structs or repairs a heater for a passenger car when the car
is not *en route,* or a railroad employee repairing cars at its
repair shops when the cars are not *en route,* is employed in in-
terstate commerce within the meaning of this statute.  The
words "employed by such carrier in such commerce" must
mean employed directly in transportation or in some act di-
rectly facilitating transportation.  A box company manufac-
turing or repairing boxes for packing goods which may be
used in either kind of commerce is not engaged in interstate
commerce nor are its employees employed in interstate com-
merce.  At the same time, if an interstate train or car stops
temporarily *en route* for repairs necessary to enable it to pro-
ceed on its interstate journey and it is intended that the car
should so proceed when the repairs are made, the employee
making such repairs would be employed in interstate com-
merce.  This, I think, is what was decided in case num-
bers 289 and 290, *Second Employers' Liability Cases,* 223 U.
S. 1, 32 Sup. Ct. 169.  But where the thing repaired is itself
a mere appliance, useful and used in either kind of commerce
as occasion might require, like a handcar, a wheelbarrow, a
capstan or jackscrew or a shovel, and this appliance at the
time the repairs thereon are made is not being used to facili-
tate interstate commerce, but is being repaired to make it
ready for either use in the future as occasion may require, the
employee engaged in making such repair is not employed in
interstate commerce.  Any other rule would bring within this
statute almost every conceivable case of construction or repair

of transportation appliances. The Federal Reporter cases on this subject display more than the usual amount of conflict and contradiction, and in such case we can do no more than follow those which appear to us to rest on the better reason, as we did in *Pope v. Title G. & S. Co.* 152 Wis. 611, 140 N. W. 348. See *Pederson v. D., L. & W. R. Co.* 197 Fed. 537; *Taylor v. Southern R. Co.* 178 Fed. 380; *Zikos v. Oregon R. & N. Co.* 179 Fed. 893; *Colasurdo v. Central R. of N. J.* 180 Fed. 832; *Northern Pac. R. Co. v. Maerkl,* 198 Fed. 1.

The decision of the supreme court of the United States in *Southern R. Co. v. U. S.* 222 U. S. 20, 32 Sup. Ct. 2, to the effect that the federal statute requiring the use of a certain safety appliance included cars adapted for both intrastate and interstate commerce and used interchangeably in moving both kinds of traffic, was thought in *Northern Pac. R. Co. v. Maerkl, supra,* to have some bearing upon the interpretation of this Employers' Liability Act. But it does not follow at all that an employee engaged in repairing an appliance which is adapted for and may be used in facilitating either kind of traffic is employed by the carrier in interstate commerce merely because a statute requiring a certain car equipment applies to cars which are used interchangeably in moving intrastate and interstate shipments. The fact that such car is used at all in the last mentioned traffic brings it within the statute relative to equipment. *Colasurdo v. Central R. of N. J.* 180 Fed. 832 (*S. C.* on appeal, 192 Fed. 901), is, I think, correctly decided if we approach the question from the viewpoint of the learned district judge, namely, that the statute includes all such employees as Congress had power to include. But this is an unusual and extraordinary rule of construction, to say the least, and it does not seem to be well supported by either reason or authority. It makes every case a test case of the constitutional power of Congress, and imports into a mere question of statutory construction the rule of constitutional law that the statute must be upheld unless it appears beyond

a reasonable doubt to be unconstitutional. Even if we were to grant that case upon the question before us the full authority of a decision of the United States supreme court, still it does not control the instant case. For, while track repair is work which facilitates both kinds of commerce, its relation to each kind is direct and proximate. In order to move the interstate traffic, track repair is imperatively necessary and its effect in facilitating that traffic direct and immediate. Here the thing repaired was itself a mere appliance, useful and used, in either kind of commerce, as occasion might require, but not in use for the purpose of facilitating interstate commerce at the time these repairs were made thereon. We also find in *Zikos v. Oregon R. & N. Co., supra,* where the injured employee was engaged in track repairing, the following distinction made or attempted:

"No doubt there may be situations, indeed we have the highest authority for it (*Employers' Liability Cases,* 207 U. S. 463, 495, 28 Sup. Ct. 141, 52 L. Ed. 297), when instrumentalities that may be used for interstate or intrastate traffic, or both, but which at the time are not being used for either, as when engines or cars are undergoing repair, or in cases of clerical work when the acts or things done are not physically or otherwise directly connected with the moving of trains, where there would be no ground for claiming liability under the act of Congress, even though the carrier in fact be engaged in interstate as well as local traffic."

We reach the conclusion that the employee is not employed by the carrier in interstate commerce where he is engaged in constructing or repairing an appliance, which appliance may thereafter be used to facilitate intrastate or interstate transportation as occasion may require, and is intended for such use, but is not at the time the repairs in question are being made in use for the purpose of facilitating interstate transportation. This disposes of all liability of the defendant under the act of Congress in question, and other contentions of the defendant made respecting this subject need not be considered.

2. On the facts stated, was a case made for the appellant under sec. 1816, Stats. ? Sub. 8 of that section provides as follows:

"In any action brought in the courts of this state by a resident thereof, or the representative of a deceased resident, to recover damages in accordance with this section, where the employee of any railroad company owning or operating a railroad extending into or through this state and into or through any other state or states shall have received his injuries in any other state where such railroad is owned or operated, and the contract of employment shall have been made in this state, it shall not be competent for such railroad company to plead or prove the decisions or statutes of the state where such person shall have been injured as a defense to the action brought in this state."

No argument is presented by appellant attacking the constitutionality of this section of the statute. Upon principle it seems that the state has power to enact such a statute regulating relations of master and servant where both are within the jurisdiction of this state and the contract of employment is made in this state. The state may in such cases by statute fix the liabilities as between such parties which will arise out of and become incident to such contract of employment, whether the negligent injury occur within this state or outside of this state, where the employee is so outside of the state on the business of the employer and pursuant to the contract made in this state.

But sub. 9 of said sec. 1816 provides as follows: "The provisions of this section shall not apply to employees working in shops or offices." Under the facts stated the plaintiff was a shop employee of the defendant, and such was the nature of his contract of employment. It was held in *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756, where this act was sustained upon that ground, that this subdivision referred to a class of employees not engaged in that part of the railroad service which exposes them to unusual dangers and hazards of such service. Literally this subdivision might be read so as to apply only to those while

working in the shop or in the office.  But that seems a narrow and irrational construction.  A shop employee who goes into the shop yard or even a great distance from the shop for the purpose of performing the kind of labor which is ordinarily done in the shop, is, we think, within this exception.  The words "employees working in shops or offices" must therefore, we think, include that class employed for such service whether actually within the walls of the shop or not, so long as they are employed for shop work, although outside the shop at the time of injury.  If this is correct no case was made under sec. 1816.

3. We next consider how the case stands at common law. From the case of *Webster Mfg. Co. v. Nisbett,* 205 Ill. 273, 68 N. E. 936, offered in evidence by the defendant to prove the law of that state, we do not understand that the law relative to simple tools is materially different in that state from the law in this state.  When the decisions of another state are offered in evidence to prove the law of that state the point decided is what is proven as law, and argument, illustration, wit, humor, or philosophy which may be found in such decision may be considered harmless surplusage.  There a blacksmith's hammer was held to be a simple tool with which the employee was or ought to have been familiar.  In *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059, a pick or hammer used by locomotive firemen for breaking up coal is held to be a simple tool which the master is not bound to inspect for the purpose of discovering defects.  In *Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419, a machinist's hammer was held to be such simple tool; and in *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 106 N. W. 841, a monkey wrench was assumed generally to belong in this category.

No error is assigned in this court which raises the question of the sufficiency of the instructions.  We do not think it appears affirmatively and without contradiction that the punch in question was a simple tool within the rule of the foregoing

cases. The implement was simple enough in form. But it was not simple with reference to its use or its resisting qualities or with reference to the effect of using it after the end became battered or burred. Doubtless there is some good reason for making the punch in the shape described and using a sledge of such weight (ten or twelve pounds), but this is not explained by the evidence. If the plaintiff used, held, or handled the punch immediately prior to the time of injury he might be charged with knowledge of its condition. But the work was done at night. Plaintiff first took part by striking with the sledge and then changed work with a fellow workman and held the light, standing two or three feet from the work. Ostermick, who held the punch, says he found it lying "on the job," picked it up, and it was then, when the work began, somewhat burred. The testimony tends to show that the length of time a tool of this kind may be used before it becomes burred depends upon the quality and temper of the steel. If a punch is properly handled it should be good for five or six and sometimes ten hours before it is re-dressed. But when it is burred to a considerable extent it should be re-dressed before using. Striking on the punch has a tendency to make the steel hard and brittle and to break off the burrs, which then are apt to fly. When a tool of this kind begins to show signs of burring it should be reforged or reground, and a tool of this kind should not be burred at all when in use. The plaintiff, being a boiler maker, perhaps knew of this generally as applied to tools of this kind, but the jury found upon evidence that he did not know of these defects on the punch in question, which is credible because the work was done at night. The jury also found that he was not guilty of contributory negligence. We cannot say, as against the verdict of the jury, that a punch of this description given, adapted for use in this kind of work and under the circumstances above set forth, was a simple tool.

*By the Court.*—Judgment affirmed.