KARRAS, Appellant, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Respondent.

*April 27—May 15, 1917.*

*Master and servant: Injury: Employment in interstate commerce:
Federal or state statute? Assumption of risk: Unsafe appliance:
Simple tool: Duty of employer.*

1. A mere manufacture or preparation of material which is destined
   at some time in the future to be used in interstate commerce is
   not interstate commerce work. So *held* as to the peeling of
   railroad ties when done as a part of their manufacture inde-
   pendent of, and separate from, any immediate use of them in
   track repair, although the work was done by an employee, and
   upon the right of way, of a railway company engaged in inter-
   state commerce.
2. An action against the railway company for a personal injury sus-
   tained by the employee while engaged in said work was gov-
   erned by the state, and not by the federal, statute, and he did
   not assume the risk arising from a failure of the employer to
   furnish reasonably safe appliances for the work.

3. The injury in such case was caused by a chip striking plaintiff's eye as he was chopping a knot on a tie with a dulled and short-handled hatchet which had been furnished to him for doing the work, and which he had been using for about two hours. *Held*, that such hatchet was a simple tool, that plaintiff, who was a man of mature years, must be deemed to have comprehended the ordinary and usual results of its use, that no duty devolved upon defendant to inspect it or instruct plaintiff in its use, and that the trial court should have set aside a finding by the jury that the hatchet was not a reasonably safe appliance for the purpose for which it was used.

KERWIN, SIEBECKER, and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Iron county: G. N. RISJORD, Circuit Judge. *Affirmed.*

Action for personal injury. In February, 1913, plaintiff, then about fifty years of age, came to this country from Greece. Since his arrival and up to the time of his injury on June 12, 1915, his principal employment was that of a section repair man on railroads. On June 12th, for the purpose of peeling hemlock ties, he was given a hatchet or small broadax beveled on one side, with a handle about fourteen inches long measured from the head. The hatchet was dull and somewhat nicked. A couple of hours after he began work, he said, "I started to peel one hemlock tie, and I find one knot or bark there, and I strike it hard many times and the bark came out or the knot and strike me on the right eye," from which blow to the eye the injury complained of resulted. Plaintiff came from a farm in Greece where there was no wood and had had very little experience in the use of an ax or hatchet.

The case was tried to a jury and it found (1) that the hatchet was not a reasonably safe appliance for the purpose for which it was used; (2) that the failure to furnish a reasonably safe appliance was the proximate cause of the injury; and (3) damages in the sum of $750. The court entered judgment for defendant notwithstanding the verdict upon the ground that plaintiff at the time of his injury was

engaged in interstate commerce and assumed the risk.    The plaintiff appealed.

For the appellant there was a brief by *William E. Fisher* of Stevens Point, attorney, and *James A. O'Neill* of Ironwood, Michigan, of counsel, and oral argument by *Mr. Fisher.*

*R. N. Van Doren* of Milwaukee, for the respondent.

Vinje, J.    Was the trial court right in holding that plaintiff was engaged in interstate commerce? There is no question but that the defendant was so engaged and that any actual repair work to its track at the time and place of injury would be interstate commerce work. *Pedersen v. D., L. & W. R. Co.* 229 U. S. 146, 33 Sup. Ct. 648.    The nature of the work being done at the time of the injury determines whether or not it is an interstate commerce employment. *Ruck v. C., M. & St. P. R. Co.* 153 Wis. 158, 140 N. W. 1074; *Ill. Cent. R. Co. v. Behrens,* 233 U. S. 473, 34 Sup. Ct. 646.    It appears that the ties plaintiff was peeling had been purchased by defendant at Watersmeet, Michigan, and shipped to this track section.    They were dumped in piles of from thirty to fifty and more to be peeled and subsequently used where needed in the repair of the track.    They were so used during the summer and up to some time in September.    Ties with the bark on were not put into the track.    Hence, in order to be fully prepared for track repair, they must be peeled.    The peeling, therefore, was a part of the process of manufacture of the ties for the purpose intended.    This process, in the case at bar, was carried on independent of, and separate from, a then immediate use of the ties in track repair.    It was a preparation of them for future use.    That it was done by the defendant upon its right of way instead of by others elsewhere, or that the ties were destined for interstate commerce, cannot constitute the process of their manufacture interstate commerce work.    To constitute that there must be an actual entering

upon or engagement in such work. A mere manufacture or preparation of material which is destined at some time in the future at some place to be used in interstate commerce work is not enough. *Sullivan v. C., M. & St. P. R. Co.* 163 Wis. 583 (158 N. W. 321) and cases cited on page 587; *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353, 37 Sup. Ct. 170. It follows that plaintiff was not engaged in interstate commerce work at the time of his injury.

Were the jury warranted in finding that defendant was negligent in furnishing a dull and nicked hatchet with a short handle? It is urged, and there is evidence to support the claim, that a dull and nicked hatchet tends more than a sharp one to throw the chips towards the one using it, and that the head and eyes must be held nearer the work when using a short-handled hatchet than a long-handled ax. This may be conceded. But it does not follow from such concession that a dulled and short-handled hatchet, for the purpose for which this was used, is not a simple tool within the meaning of the rule announced in *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 106 N. W. 841; *Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419; *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059; and in *Kolasinski v. C., M. & St. P. R. Co.* 164 Wis. 50, 159 N. W. 563. We deem it a simple tool. A man of mature years in the full possession of his senses must be held to comprehend the ordinary and usual results that follow the use of a dulled, short-handled hatchet in the operation of peeling ties. Adult, sane human beings, though not of a high order of intelligence or of great experience, must be accorded some field within which they may be said to fairly comprehend the ordinary and usual results of the work in which they are engaged. If the use of the hatchet in question does not come within that field it is difficult to conceive what does. Plaintiff had used the hatchet two hours before he was hurt and the length of the handle and its dulled condition must have become apparent

to him before his injury occurred.    True, one may argue·
that many results may follow this or that condition of a tool,
and that the results are not easily ascertainable or understood
by men lacking in experience—and one may add by those of
the ripest experience when it comes to forecasting all the re-
sults that may follow from a given condition.    The field of
argument is limitless; but one can hardly solve such ques-
tions satisfactorily by reasoning.    They lie rather within the
field of perception,—within that field wherein the average
experience of mankind furnishes the best standard.    Tested
by such experience, we think the hatchet and the use thereof
constituted one of those simple tools and operations whose
probable results must be held to be practically as familiar to
one mature man as to another.    For that reason no duty de-
volved upon the defendant to inspect the hatchet or instruct
plaintiff in the use thereof.    *Gibson v. Milwaukee L., H. &
T. Co.* 144 Wis. 140, 143, 128 N. W. 877.

· The conclusions reached show that the trial court erred in
holding that plaintiff was engaged in interstate commerce
and also in not setting aside the answer of the jury to the
first question of the special verdict.    The result is the judg-
ment must be affirmed, but upon a different ground.

*By the Court.*—Judgment affirmed.


Kerwin, J. (*dissenting*).    It is conceded in the majority
opinion that the plaintiff was not engaged in interstate com-
merce.

The jury found (1) that the hatchet plaintiff used in peel-
ing bark at the time he was injured was not a reasonably safe
appliance for that purpose; (2) that the failure to furnish
a reasonably safe appliance in peeling bark was the proxi-
mate cause of the plaintiff's injury; (3) damages assessed
at $750.    These findings of the jury are supported by the
evidence and judgment should have been for the plaintiff for
the amount of damages found.    The rule is elementary that

it was the duty of the defendant to furnish the plaintiff reasonably safe tools and implements with which to do his work. *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059; *Borden v. Daisy R. M. Co.* 98 Wis. 407, 412, 74 N. W. 91; *Boelter v. Ross L. Co.* 103 Wis. 324, 79 N. W. 243; *Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419.

There is an abundance of evidence to support the verdict that the hatchet was not a proper tool for doing the work,— that it was a dangerous implement to use for such purpose, and that plaintiff was ignorant of the danger.

The plaintiff testified that he never used an ax before he came to this country; that he never saw any one cut wood with an ax in Greece; that there was no wood where he lived in Greece. The evidence further shows that a sharp ax with a long handle is the proper tool to use for peeling ties, and that a hatchet such as the one used by plaintiff was not a proper tool for the work and was dangerous because of being dull and having a short handle, which necessitated the operator keeping his face near the hatchet and on the beveled side from which the chips and bark would fly. A witness, who showed much experience in peeling ties, said he never saw a hatchet used for that purpose, and said it was not a proper tool to use because the employee using it would be likely to get hurt; that with a long-handled ax one can stand up straight and keep his face away from the bark and knots that fly from the ax. The hatchet in use had a square face on the left side and was beveled on the right side. The tie was laid on the ground so that when operating the hatchet it would throw the flying material into plaintiff's face, which, on account of the shortness of the handle, was only about fourteen inches from the hatchet. The first day plaintiff was given a long-handled ax which was generally used, but on account of there not being a sufficient number of axes on the day of the injury for all employees engaged in peeling ties, plaintiff was given a hatchet and told to work with it, and was injured a short time after

he began work—one witness says half an hour and another two hours after he began work; that an ax worker is a skilled workman.

Plaintiff testified that he had hold of the hatchet with both hands; was standing chopping on the right-hand side toward where he was facing. He further testified:

"At the time I got hurt, I got the hatchet in my hands and I started to peel one hemlock tie, and I find one knot or bark there, and I strike it hard many times and the bark came out or the knot and strike me on my right eye, and I fell down and I don't understand where I was. The hatchet was about this long [indicating about twelve inches]. It had a short handle and was dull, just like a saw—it had that nicks. I didn't have any other tool in peeling ties. The boss handed the hatchet to me. He didn't have tools enough to give to the men to peel ties. He borrowed an ax from a farmer to give to another fellow."

The majority opinion is made to turn upon whether the hatchet was a "simple tool." The question is not whether the hatchet was a simple tool, but whether it was a fit and safe tool for the use. The tool was simple when used for the purpose intended. As said in *Ruck v. C., M. & St. P. R. Co.* 153 Wis. 158, 140 N. W. 1074: "The implement was simple enough in form. But it was not simple with reference to its use . . ." The negligence of defendant was in furnishing a defective tool and one not fit for the purpose for which it was used. *Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419; *Ruck v. C., M. & St. P. R. Co., supra.* The evidence shows that the hatchet was kept for splitting wood, not for peeling ties.

The nonliability of a master in the case of furnishing to an employee a "simple tool" rests on the principle that warning or inspection on the part of the master is not necessary. The master is not bound to warn or inspect, because the defect is as open and obvious to the employee as to the master. *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 106 N. W. 841;

*Meyer v. Ladewig,* 130 Wis. 566, 110 N. W. 419; *Kolasinski v. C., M. & St. P. R. Co.* 164 Wis. 50, 159 N. W. 563.

But the "simple tool" doctrine has no application to a case where a tool is furnished by the master for a purpose for which it is not fit, and the use of which in the business for which it is furnished is dangerous to the employee without knowledge on his part of the danger.

The rule is well stated by Mr. Labatt in his work on Master & Servant, when treating the subject, as follows:

(2) "A master is guilty of a breach of duty, if he fails to see that the instrumentalities supplied are of such a character and maintained in such a condition that his servants will be able to carry on their work without the risk of injury as long as they exercise proper care in the use of those instrumentalities.

"In the absence of other controlling considerations, therefore, the question whether an injured servant can recover will, in certain states of the evidence, hinge upon the question whether the instrumentality which caused the injury was one which, with reasonable care and caution, could be used by him without danger at the place and in the manner in which it was used." 3 Labatt, Mast. & Serv. (2d ed.) § 925, sub. (2).

Surely it cannot be said that the plaintiff, who had no knowledge of using an ax of any kind, could be said to be chargeable with knowledge that the hatchet furnished him was a dangerous implement and unfit for use in peeling ties. But the duty clearly rested upon the defendant to furnish a suitable tool for the work.

I am authorized to say that Justice SIEBECKER and Justice ESCHWEILER concur in this dissent.