WACHSMUTH *v.* SHAW ELECTRIC CRANE CO.

118    275
d127   111
d127   112

118    275
s76NW  497
f131  ²146

118    275
s76NW  497
132   ²172

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—NEGLIGENCE. Defendant provided certain of its employés with a simple tool, called a "snap-hammer," for use in riveting. The tool was made by a competent blacksmith, from proper material. The employés who used the hammer were skilled mechanics, as competent as any one to decide when it became out of repair, and were at liberty at any time to have it repaired or replaced by a new one. A chip from the hammer struck plaintiff and injured him. It did not appear that an inspection before the accident would have disclosed any defect. *Held*, that defendant was not liable.

2. SAME—DUTY OF INSPECTION—SIMPLE TOOLS.

> The duty of inspection, by an employer, of the appliances used by his employés, does not extend to the small and common tools in everyday use, of the fitness for use of which the employés using them may reasonably be supposed to be competent judges.

Error to Muskegon; Russell, J. Submitted June 9, 1898. Decided October 3, 1898.

Case by Albert J. Wachsmuth against the Shaw Electric Crane Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Bunker & Carpenter*, for appellant.

*Chamberlain & Cross*, for appellee.

MOORE, J. Plaintiff recovered a judgment against the defendant for the loss of one of his eyes. Defendant brings the case here by writ of error.

It is the claim of the defendant that there was contributory negligence on the part of the plaintiff. That question was fully submitted to the jury, who found against the contention of defendant.

The important question is, Does the testimony tend to show any negligence on the part of the defendant? The plaintiff is an intelligent workman, upwards of 30 years old. He had been a machinist 14 or 15 years. He worked for the defendant several years, operating a machine for boring iron. Not far from his machine a gang of men were engaged in riveting together parts of a bridge for an iron crane. The process is for one man to heat the rivets. Another places beneath the rivet a solid support, capped by a piece of steel, in which there is a cup to hold in place and preserve the under head of the rivet. Another man places on the upper end of the rivet a snap-hammer, which is a hammer with a cup on its face, designed to form the upper head of the rivet. While the rivet is hot, this snap-hammer is struck by two men, with sledges,

alternately, until the riveting is completed.   It is the claim of the plaintiff that he stepped away from his machine to inspect some trolley sides, upon which he would later have to do some work, and that, while so doing, a piece of steel was broken from the face of the snap-hammer, and struck him in the eye, resulting in its loss.   He further claims this snap-hammer was out of repair, and should have been known to be so by the defendant, and that it was not a reasonably safe tool with which to do the work. It is the claim of the defendant that the tool was properly made by its blacksmith, from the best material; that it was not out of repair; that what occurred was an accident which could not have been foreseen.   It is also claimed that, when the accident occurred, plaintiff was not engaged in necessary work, but was leaning on a pile of trolley sides, looking at the riveters, and that his negligence caused the accident.   It is also claimed that, if the tool was out of repair, it was the fault of the man who was using it, and that he was a fellow-servant, and for that reason plaintiff cannot recover.   Defendant asked the court to direct a verdict.   This was denied.   This is said to be error.

The case is very near the border line which separates those cases where a verdict should be directed from those where the case should be submitted to the jury.   The difficulty does not grow out of the law itself, so much as out of the application of the law to a given case.   It is now well settled the master owes to the servant the duty of using ordinary care and diligence in providing for his use sound and safe materials, and such appliances as are reasonably calculated to insure his safety.   He is also bound to examine and inspect these things from time to time, and to use ordinary care and skill to discover and repair defects in them.   1 Shear. & R. Neg. § 194; 2 Thomp. Neg. 984; 14 Am. & Eng. Enc. Law, 894; 7 Am. & Eng. Enc. Law, 830; *Holden* v. *Railroad Co.*, 129 Mass. 268; Cooley, Torts, 556; *Johnson* v. *Spear*, 76 Mich. 139 (15 Am. St. Rep. 298); *Tangney* v.

*Wilson & Co.*, 87 Mich. 453; *Anderson* v. *Railroad Co.*, 107 Mich. 591; *McDonald* v. *Railroad Co.*, 108 Mich. 7.   The record shows defendant furnished an excellent quality of steel from which to make the tool.   It was made by a competent blacksmith.   There is no claim that when made it was not a proper tool with which to do the work required.   The men using it were skillful mechanics, as competent as any one would be to decide from an inspection of the tool whether it was a reasonably safe one to use or not.   The men were not required or expected to use a tool after it became unsafe because of use or for any other cause.   They were at liberty to take a defective tool at once to the blacksmith, and have it repaired or get a new one in its place.   This tool was a simple one.   The men using it were competent to pass upon its fitness for use.   All the witnesses who saw the hammer say it was a safe one to use.   The only testimony to the contrary is given by the plaintiff, who never saw the tool, but was of the opinion, judging from the appearance of the small piece of steel taken from his eye, the tool was not a proper one to use.   The testimony discloses that no steel is so perfect as not to have defects which will not be disclosed by inspection.   Sometimes a sliver will break off from the best of hammers.   It does not appear that an inspection would have shown any defect in the hammer.

The plaintiff failed to establish a cause of action.   The court should have directed a verdict in favor of defendant. *Rawley* v. *Colliau*, 90 Mich. 31; *Kehoe* v. *Allen*, 92 Mich. 464 (31 Am. St. Rep. 608); *Miller* v. *Railroad Co.*, 21 App. Div. 45; *Marsh* v. *Chickering*, 101 N. Y. 396.

Judgment is reversed, and a new trial ordered.

MONTGOMERY, J., concurred with MOORE, J.

HOOKER, J. (*concurring*).   I concur in the result reached by Mr. Justice MOORE in this case upon the grounds stated by him, but I am of the opinion that the duty of periodical inspection does not extend to the small

and common tools in everyday use, of the fitness for use of which the persons who use them may reasonably be supposed to be better judges than the master, or any person that he can employ for the purpose. The evidence shows that there were thousands of small tools in this shop, and it is improbable that there was any one man in the shop that was as expert in the use of all as the individual workmen were as to those that they respectively used. In my opinion, it is not unreasonable to say that the workmen assumed the risk of the use of such tools of this character as they chose to use. As already stated, the evidence shows that the small tools in use in this factory numbered thousands. We may assume that they consisted of innumerable articles of everyday use, such as crowbars, picks, spades, shovels, chisels, files, rasps, pliers, wrenches, braces and bits, reamers, and others that will readily suggest themselves, including hammers. It is well known that most such tools are used until they become unfit for use by wear, and that the user is not only competent to judge of their fitness, but as a rule does so. There is no evidence in the case that any concern in the country employs a person to inspect the common tools in use in the shop.

We have decisions sustaining the doctrine that a master must provide safe appliances, and that he must use reasonable diligence in keeping them in repair. In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness, or the opportunities to do so, the law may require diligence upon the part of the master; but where the appliance is a common tool, of which the man who uses it is necessarily well qualified to judge, and who when he uses it has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool, if it is unsafe. This exception to the rule relied on in this case is recognized in *Miller* v. *Railroad Co.*, 21 App. Div. 45, where it was held that the master was under no obligation to inspect a push-bar, used in moving cars,

which from use would wear, and from lapse of time decay, and which would naturally be first observed by the user. It was said in that case that "there is no duty resting on an employer to inspect during their use those common tools and appliances with which every one is conversant," and that "if a spade, a hoe, or a push-stick either wears out or becomes defective, the employer may ordinarily rely on the presumption that those using the article will first detect the defect." If, as held in the case cited, a master is not under a legal obligation to protect the servant using the tool by inspection, he is under no such obligation to the fellow-servant who suffers from the negligent use of the tool.

GRANT, C. J., and LONG, J., concurred with HOOKER, J.