SHELTROWN *v.* MICHIGAN CENTRAL RAILROAD CO.

1. JUDGMENT—RESERVATION OF DECISION—JUDGMENT INADVERTENTLY ENTERED MAY BE SET ASIDE.

   Where, in an action for personal injuries, defendant's counsel moved for a directed verdict, and the trial judge, while he did not say, in the language of the statute (3 Comp. Laws 1915, § 14568), that he reserved decision on the motion, clearly gave counsel to understand that he did so, judgment entered on the day following rendition of verdict in favor of plaintiff was inadvertently entered, and the court had power to set it aside and enter judgment for defendant on the motion.

2. MASTER AND SERVANT—EXCEPTION TO RULE REQUIRING MASTER TO INSPECT TOOLS—SIMPLE TOOLS.

   To the elementary rule that a duty devolves upon the master not only to furnish his servant with reasonably safe machinery and appliances with which to perform the work required of him, but that he must also, by inspection from time to time, and by ordinary care and diligence in making repairs, keep them in a safe condition, there is an exception in the case of simple tools.

---

As to liability of master for injury to servant from defect in simple tool, see annotation in 13 L. R. A. (N. S.) 668, 687; 40 L. R. A. (N. S.) 832; 51 L. R. A. (N. S.) 337; L. R. A. 1918D, 1141.

3. SAME—WHAT IS SIMPLE TOOL.

What is, or is not, a simple tool, and the duty of the master to inspect it if it is not, depends much upon the use to which it is to be put by the employee, and his age, his capacity to appreciate danger, the nature of the employment, his familiarity with the work to be done, and many other things may be considered in determining these questions.

4. SAME—NEGLIGENCE—NO DUTY ON MASTER TO INSPECT JACK.

Where an employee, who for two years had been in charge of inspection and repair work in a railroad yard and had no superior officer at the place where he worked, selected from three jacks a defective one, although a slight examination would have disclosed the defect, and was injured while using it, there was no liability on the part of the employer; no duty to inspect the jack being imposed on the employer under the circumstances.

Error to Bay; Houghton (Samuel G.), J. Submitted October 9, 1928. (Docket No. 112, Calendar No. 33,999.) Decided December 4, 1928.

Case by Clyde E. Sheltrown against the Michigan Central Railroad Company for personal injuries. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Affirmed.

*Kinnane & Leibrand,* for appellant.

*Hewitt & Brooker (J. Walter Dohany* and *John J. Danhof, Jr.,* of counsel), for appellee.

SHARPE, J. This action is brought to recover the damages sustained by plaintiff, due to a personal injury while in the employ of defendant. He had verdict for $7,000. The record discloses that a judgment was entered thereon on the following day. The court, however, afterwards, on defendant's motion for judgment notwithstanding the verdict, set aside the verdict and the judgment and entered one for

the defendant. Plaintiff seeks review by writ of error.

1. It is insisted that the motion for a directed verdict had not been reserved by the court and that the judgment first entered is a bar to the after proceeding. It appears in the record that at the conclusion of the proofs one of defendant's counsel said to the court:

"We move the court to direct a verdict in favor of the defendant now at the close of plaintiff's testimony, for the reason that the plaintiff in this case assumed the risk, he being in charge and having selected his own tools to do the work in question in this case."

After argument the court said:

"In regard to the motion, the court is somewhat impressed with defendant's contention, but the disposal of it will be deferred, and, if necessary, counsel may submit a brief, and the case will be submitted to the jury."

While the court did not say, in the language of the statute (3 Comp. Laws 1915, § 14568), that he reserved decision upon the motion, he clearly gave counsel to understand that he did so. The judgment thereafter was inadvertently entered. It does not appear that plaintiff's counsel objected to the consideration of the motion for this reason. The court had the power to set it aside as he did, and enter judgment on the motion. *Kintz* v. *Galvin*, 219 Mich. 48; *Stanaback* v. *McFadden*, 225 Mich. 452.

2. *Negligence of Defendant.* Plaintiff entered the employ of the defendant at Bay City, a junction point on defendant's road, on August 25, 1922. He was engaged in inspecting and repairing cars and "all kinds of different work around the yards." He

occasionally used jacks for raising cars while there. About a year later he was transferred to Owosso. He had no superior officer at that place. His duty was to inspect and make repairs on cars passing through that station or received by the defendant from the other railroads which cross defendant's line at that point.. He was provided with a tool house in which to store the tools and appliances needed in his work. The key to the lock on this building was in his possession. His work was done under the supervision of the foreman at the Bay City yards, who was seldom, however, at Owosso. He would make requisition for such tools as he needed in his work. He recalled sending two jacks to Bay City for repairs. He had three jacks in his tool house at the time of his injury.

On November 23, 1925, he received an order to go to Bennington to put a new brass into a car which had been placed on a side track. He put such tools and brasses as he thought he would need, including the jack in question, on a motor car provided for his use, and went there and was engaged in this work when he was injured. Plaintiff testified that he raised the car by placing a jack under the journal box on both sides of it, and put the new brass in and started to lower the jack; that it "slipped and broke and struck me on the hand and knee. It came out with a force around out this way, the entire jack and handle;" that he then discovered—

"there was an old crack, about two-thirds across. Right from the top of the stem and cap, across on a slant. About two-thirds of the cap was broken off. It was an old break—the other third was just a kind of corner out all the way along, and broke right out, gave out with the other two-thirds, kind of ragged like. All the way I could determine that would be

an old break, would be black and rusty, and a new break would be kind of a white or silver color. About two-thirds of it was an old break.

"*Q.* Now, was that crack one that you could see without a minute inspection?

"*A.* Well, it might with a close inspection, but not the—I have never had any orders for inspection on that."

The "jack" is thus described:

"The jack is about 14 inches in height, has a base of about 8 inches across the bottom, is about 3½ or 4 inches across the top of the stem, and works on a screw arrangement on the inside of the jack at the base of the jack. This screw is worked by the ratchet being pumped up and down with a handle that is inserted into the socket of the jack."

The nature of this tool and the manner in which it is operated is so well known, as it is part of the standard equipment of automobiles, that further explanation is unnecessary.

The negligence of which plaintiff complains is a lack of inspection of the broken jack on the part of the defendant.

It is elementary that the duty devolves upon the master, not only to furnish his servant with reasonably safe machinery and appliances with which to perform the work required of him, but he must also, by inspection from time to time, and by ordinary care and diligence in making repairs, keep them in a safe condition. *Anderson* v. *Railroad Co.*, 107 Mich. 591. To this rule there is an exception in the case of simple tools.

"Where the tool is simple in construction, so that defects therein can be discovered without special skill or knowledge and without intricate inspection, the servant is as well qualified as anyone else to de-

tect defects and to judge of the probable danger of using such tool while defective; and, the tool being in the possession of the servant, his opportunity for inspection is better than that of the master.'' 18 R. C. L. p. 563.

''And so, also, a master is under no obligation to his servants to inspect during their use those common tools and appliances with which everyone is familiar; nor is it the master's duty to repair defects arising in the daily use of an appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen.'' 39 C. J. p. 419.

In *Wachsmuth* v. *Electric Crane Co.,* 118 Mich. 275, 279, it was said:

''We have decisions sustaining the doctrine that a master must provide safe appliances, and that he must use reasonable diligence in keeping them in repair. In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness, or the opportunities to do so, the law may require diligence upon the part of the master; but where the appliance is a common tool, of which the man who uses it is necessarily well qualified to judge, and who when he uses it has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool, if it is unsafe.''

This holding was cited with approval in *Toth* v. *Osceola Mining Co.,* 180 Mich. 274, by the court of appeals in *Northern Pacific R. Co.* v. *Altimus,* 179 Fed. 275, and in *Missouri Valley Bridge & Iron Co.* v. *Nunnemaker,* 209 Fed. 32, and in *Lynn* v. *Refining Co.,* 128 Iowa, 501 (104 N. W. 577). In the latter case, the court said:

''It is only machinery and appliances which are recognized as in their nature dangerous to em-

ployees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his safety.''

The decisions of other courts have been collected in the notes to 13 L. R. A. (N. S.) 679; 40 L. R. A. (N. S.) 832; 51 L. R. A. (N. S.) 337; and L. R. A. 1918D, 1141. What is, or is not, a simple tool under the rule stated, and the duty to inspect if it is not, depends much upon the use to which it is to be put by the employee. His age, his incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done, these and many other things may be considered in determining the obligation resting on the employer to make inspection. His nonliability in such cases rests upon the assumption that the employee is in as good, if not better, position to observe the defect as the employer. *Meyer* v. *Ladewig,* 130 Wis. 566 (110 N. W. 419, 13 L. R. A. [N. S.] 684). The test depends, not only on the simplicity of construction, but also somewhat on whether the tool is subjected to any other stress than the muscular effort of the person using it.

The record does not disclose the length of time this jack had been in the tool house at Owosso at the time of plaintiff's injury. He had been there employed for more than two years. No inference can fairly be drawn that it was defective at the time it was sent there for use, whether before or after plaintiff went there. To hold that defendant failed in its duty to inspect this jack, we must say that it was required to keep an inspector at Owosso for that purpose. There were three jacks in the tool house. Plaintiff had frequent occasion to use them. A slight examination of the top of the cap would have disclosed the crack therein. It also appears

from the testimony of one of plaintiff's witnesses that a tap on the cap of the jack would have disclosed its defective condition from the sound thereof, and that this was the usual method of testing castings for defects.

In our opinion no actionable negligence on the part of the defendant was established.

The judgment entered on the motion therefor is affirmed.

Fead, C. J., and North, Fellows, Wiest, Clark, McDonald, and Potter, JJ., concurred.