### RULE *v.* GIUGLIO.

1. Master and Servant—Workmen's Compensation Act—Assumed Risk—Contributory Negligence.

   Employer who had not elected to come under the workmen's 'compensation act was deprived of the defenses of assumed risk and contributory negligence (2 Comp. Laws 1929, § 8407).

2. Same—Negligence—Burden of Proof.

   In employee's action against employer who has not elected to come under the workmen's compensation act, plaintiff has burden of showing negligence on part of defendant (2 Comp. Laws 1929, § 8407).

3. Appeal and Error—Judgment Notwithstanding Verdict—Evidence.

   On appeal from judgment for defendant, entered by trial court · notwithstanding jury verdict for plaintiff, Supreme Court views testimony in light most favorable to plaintiff.

4. Same—Verdicts and Findings—Evidence—Master and Servant.

   Jury's determination that plaintiff was an employee of defendant rather than an independent contractor when plaintiff was injured is not disturbed by Supreme Court where such finding is supported by evidence.

5. Master and Servant—Employer's Duty to Inspect Furnished Tools of Employment—Simple Tools.

   If tool furnished employee by employer who has not elected to come under the workmen's compensation act is such as not to come within the classification of a simple tool, it is the employer's duty to make proper inspection and necessary repair thereof and to furnish plaintiff with a reasonably safe · tool with which to do the work.

6. Master and Servant—Simple Tools—Defects—Inspection.

   Under the simple-tool doctrine the employee is deemed as well qualified as the employer to examine the tool furnished by

---

Liability for defective tools supplied to workmen, see 2 Restatement, Torts, § 392, and particularly comment (e), illustration 1.

the latter, to detect defects therein and to judge the probable danger of using it, and the employer is not liable for defects in the tool or for failure to inspect it.

7. SAME—DANGEROUS MACHINERY—EMPLOYER'S DUTY TO INSPECT.
   It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his safety.

8. SAME—EMPLOYER'S DUTY TO INSPECT.
   In determining an employer's duty to inspect tool furnished his employee with which to work, the latter's age, his incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done, and many other things must be considered, nonliability for defect of a simple tool resting upon assumption that the employee is in as good, if not a better, position to observe defect as the employer.

9. SAME—LADDERS—SIMPLE TOOLS.
   An ordinary ladder is a simple and ordinary tool, the nature of which is so easily understood that the servant who uses it is conclusively presumed to assume the risk of all defects therein, whether patent or latent and whether the master knows of such defects or could have known of them by the exercise of reasonable care or not.

10. SAME—LADDER—SIMPLE TOOL—DISCOVERY OF DEFECTS.
    The lower section of defendant's extension ladder of the usual type of wooden construction, consisting of two side pieces with connecting rungs inserted in holes bored in such side pieces, is a simple tool, and plaintiff who had used it before painting defendant's house was as well qualified to detect defects therein which then resulted in its breaking and to judge of the probable danger of using it as was defendant employer since the defect could have been discovered without special skill or knowledge and without intricate inspection, hence defendant was not liable for such defect or for failure to inspect the ladder.

11. SAME—LADDERS—SIMPLE TOOLS—NEGLIGENCE—ASSUMPTION OF RISK.
    In employee's action against employer who had not elected to come under the workmen's compensation act for injuries sustained while using a section of defendant's extension ladder, the simple-tool doctrine was properly applicable in determining

defendant's negligence and the risk assumed by plaintiff, and where employer was not shown to have been negligent otherwise, judgment for defendant was properly entered notwithstanding verdict for plaintiff.

Appeal from Houghton; Landers (Thomas J.), J., presiding. Submitted October 8, 1942. (Docket No. 40, Calendar No. 41,877.) Decided December 23, 1942.

Case by Thomas Rule, Jr., against Tony Giuglio for personal injuries sustained when he fell from a ladder. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*Ray Derham* and *John V. Zanardi,* for plaintiff.

*Spencer & McCormack,* for defendant.

STARR, J. Plaintiff appeals from a judgment for defendant, entered by the trial court notwithstanding a jury verdict for plaintiff.

Plaintiff, who was about 27 years old, and one Plourd were employed by defendant to paint the window frames, sash, and eaves of defendant's house in the city of Hancock. Defendant was to furnish the paint and ladders and to pay plaintiff and Plourd $12 for their work, of which each was to receive $6. A part of such work was painting around the attic windows above the sun porch. Plaintiff testified that he nailed a 2x4 on the slanting roof of the sun porch and placed the foot of defendant's ladder against such 2x4 and the upper end against the house. Plaintiff claims that on August 3, 1938, while he was engaged in painting around such

attic windows, the ladder on which he was standing broke near the lower end, and that he fell to the ground sustaining severe and permanent injuries.

Plaintiff began suit in August, 1940, alleging, in substance, that defendant was negligent in failing to make proper inspection of the ladder and in failing to provide him with a safe and suitable ladder. Defendant answered denying the charge of negligence. At the conclusion of plaintiff's proofs defendant moved for a directed verdict. The trial court reserved decision on such motion. At the conclusion of defendant's proofs he renewed his motion for a directed verdict, and the court reserved decision under the Empson act (3 Comp. Laws 1929, § 14531 [Stat. Ann. § 27.1461]). The case was submitted, and the jury returned a sealed verdict which, although not in proper form, indicated the jury's intention to return a verdict of $3,000 for plaintiff.

Defendant then filed motion for judgment notwithstanding the verdict, and such motion was granted and judgment entered for defendant.

Plaintiff appeals, contending that the court erred in granting defendant's motion for judgment notwithstanding the verdict, thereby holding that, as a matter of law, there was no evidence of negligence on the part of defendant. Under this contention plaintiff argues that the ladder furnished by defendant and used by plaintiff at the time of his accident was not a simple tool, and that the defenses of contributory negligence and assumption of risk were unavailable to defendant who had not elected to come under the Michigan workmen's compensation law (2 Comp. Laws 1929, § 8407 et seq. [Stat. Ann. § 17.141 et seq.]). Defendant contends that plaintiff was an independent contractor and not an employee; that the ladder in question was a simple tool and that under the simple-tool doctrine there

was no duty on him to inspect the ladder and no duty to furnish plaintiff with a safe and suitable ladder; also that there was no proof of negligence on his part.

It is admitted that defendant had not elected to come under the Michigan workmen's compensation law (2 Comp. Laws 1929, § 8407 *et seq.*) and was thereby deprived of the defenses of assumed risk and contributory negligence. However, as said by Mr. Justice BUTZEL in *Kelley* v. *Brown,* 262 Mich. 356, 359, ''This does not  *  *  *  relieve the plaintiff from the burden of showing negligence on the part of defendants.''

On appeal from a judgment for defendant, entered by the trial court notwithstanding a jury verdict for plaintiff, we view the testimony in the light most favorable to plaintiff.

The record shows that defendant owned an extension ladder consisting of two separate sections, each being between 12 and 16 feet in length, as variously described in the testimony. Defendant testified that prior to working for him plaintiff had borrowed such extension ladder and had used the same in painting other houses. The two sections or parts of the extension ladder could be connected or joined together and used as a single ladder, or they could be disconnected and used as two separate ladders. Plaintiff had used such ladder as an extension ladder in doing part of the painting on defendant's house. He had selected and was using only one section of the ladder at the time of the accident, having previously disconnected the two sections. Therefore, in considering whether or not the simple-tool doctrine is applicable, we shall consider the ladder which plaintiff was using as a single ladder from 12 to 16 feet in length. This ladder was of the usual type of wooden construction consisting

of two side pieces with the connecting rungs inserted in holes bored in such side pieces.

Plaintiff said, ''I didn't examine the ladder at all.'' The only testimony as to the ladder's being defective was by plaintiff's brother who, within a few days after the accident, finished the painting work at defendant's house and also examined the broken ladder. He testified, in part:

''*Q.* What was the condition of the ladder?
''*A.* One side was busted off at the rung.
''The ladder was the bottom part of the extension and I imagine the sides of the ladder were made of 2½x1¾ or something. The rungs they were made, probably 1¼ inches. They were round. This ladder was narrower at the top than at the bottom. The break was right at the bottom rung.
''*Q.* What did you do with the ladder?
''*A.* We sawed it off, probably four inches above where it was broke.
''*Q.* Who sawed it?
''*A.* Tony (defendant) sawed it. I held the ladder.
''*Q.* What did Mr. Giuglio say about the ladder?
''*A.* Just talked. He said he had intended to get another ladder.
''*Q.* What was the condition of this break?
''*A.* At the break it seems it was sort of pulpy, or rotten a little.''

Defendant, who weighed 245 pounds, testified that a few days prior to the accident he had used the ladder in washing the windows of his home. He also said that prior to the accident he had tested such ladder by pounding it with a hammer and that "it was O. K. * * * It was solid." From such undisputed testimony it might well be argued that although the ladder was not classified as a simple tool, defendant had made the requisite inspection to

ascertain any defects therein and had found the ladder to be apparently safe and sound.

There was testimony indicating that a strong wind was blowing at the time of the accident. Defendant said that he told plaintiff not to do the painting around the attic windows while the wind was blowing, but that plaintiff went ahead with the work. No one saw plaintiff fall, and at the time of the trial he had not recovered sufficiently from the effects of the accident to give a clear account of the circumstances. There was testimony indicating that plaintiff may have fallen off the ladder and that the break in the ladder may have been caused when it struck a gate or fence in falling. There was also testimony rather disputing plaintiff's statement that he nailed a 2x4 on the slanting roof of the sun porch and placed the foot of the ladder against it.

The first question is whether plaintiff was an employee or an independent contractor. This question was submitted to the jury under proper instructions, and by their verdict they determined that plaintiff was an employee. There was evidence supporting the jury's determination that plaintiff was an employee, and we are not disposed to disturb such finding. As said in *Buskirk* v. *Ide,* 302 Mich. 154, 162:

"There was conflicting testimony from which the jury could reasonably find, as it did, that plaintiff at the time of his injury was an employee and not an independent contractor."

The next and most serious question is whether or not the ladder furnished by defendant and used by plaintiff at the time of the accident was within the classification of a simple tool. If such ladder was not a simple tool, it was defendant's duty to make proper inspection and necessary repair thereof and

to furnish plaintiff with a reasonably safe ladder to do the painting work. However, defendant would not be under such duty to plaintiff if the ladder used was within the classification of a simple tool, because under the simple-tool doctrine plaintiff would be as well qualified as defendant to examine such ladder, to detect defects therein, and to judge the probable danger of using it. The simple-tool doctrine is stated in 18 R. C. L. p. 563, as follows:

"Where the tool is simple in construction, so that defects therein can be discovered without special skill or knowledge and without intricate inspection, the servant is as well qualified as anyone else to detect defects and to judge of the probable danger of using such tool while defective; and, the tool being in the possession of the servant, his opportunity for inspection is better than that of the master."

"A statute denying to the employer the defense of assumption of risk does not deprive an employer of the benefit of the simple-tool doctrine, which, generally, relieves the employer from liability for defects in simple tools. The simple-tool doctrine operates, not because the employee assumes risk of injury from defects in such tools, but because the possibility of injury is so remote as not to impose upon the employer the duty of seeing that they are free from defects in the first instance or of afterward inspecting them. When an employee is injured from a defect in a simple tool, the employer has no need of affirmative defenses, such as the defense of assumption of risk." 35 Am. Jur. p. 721.

"A master is under no obligation to his servants to inspect during their use those common tools and appliances with which every one is familiar; nor is it the master's duty to repair defects arising in the

daily use of an appliance, for which proper and suitable materials are supplied, and which may easily be remedied by the workmen." 39 C. J. p. 419.

In *Sheltrown* v. *Railroad Co.*, 245 Mich. 58, 62, 63, Mr. Justice SHARPE said:

"It is elementary that the duty devolves upon the master, not only to furnish his servant with reasonably safe machinery and appliances with which to perform the work required of him, but he must also, by inspection from time to time, and by ordinary care and diligence in making repairs, keep them in a safe condition. *Anderson* v. *Railroad Co.*, 107 Mich. 591 (16 Am. Neg. Cas. 98). *To this rule there is an exception in the case of simple tools.* * * *

"In *Wachsmuth* v. *Shaw Electric Crane Co.*, 118 Mich. 275, 279, it was said:

" 'We have decisions sustaining the doctrine that a master must provide safe appliances, and that he must use reasonable diligence in keeping them in repair. In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness, or the opportunities to do so, the law may require diligence upon the part of the master; *but where the appliance is a common tool, of which the man who uses it is necessarily well qualified to judge, and who when he uses it has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool, if it is unsafe.'*

"This holding was cited with approval in *Toth* v. *Osceola Mining Co.*, 180 Mich. 274, by the court of appeals in *Northern Pacific R. Co.* v. *Altimus*, 102 C. C. A. 631 (179 Fed. 275), and in *Missouri Valley Bridge & Iron Co.* v. *Nunnemaker*, 126 C. C. A. 174

(209 Fed. 32), and in *Lynn* v. *Glucose Sugar Refining Co.*, 128 Iowa, 501 (104 N. W. 577). In the latter case, the court said:

" 'It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his safety.'

"The decisions of other courts have been collected in the notes to 13 L. R. A. (N. S.) 679; 40 L. R. A. (N. S.) 832; 51 L. R. A. (N. S.) 337; and L. R. A. 1918 D, 1141. What is, or is not, a simple tool under the rule stated, and the duty to inspect if it is not, depends much upon the use to which it is to be put by the employee. His age, his incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done, these and many other things may be considered in determining the obligation resting on the employer to make inspection. His nonliability in such cases rests upon the assumption that the employee is in as good, if not better, position to observe the defect as the employer. *Meyer* v. *Ladewig*, 130 Wis. 566 (110 N. W. 419, 13 L. R. A. [N. S.] 684)."

In *Nosal* v. *International Harvester Co.*, 187 Ill. App. 411, the court said:

"Where a ladder, which is a simple and ordinary tool, the nature of which is easily understood, is used by a servant who is familiar with it, the servant in using the same is conclusively presumed to assume the risk of all defects therein, whether patent or latent and whether the master knows of such defects or could have known of them by the exercise of reasonable care or not."

See, also, *Nichols* v. *Bush*, 291 Mich. 473; *Kelley* v. *Brown*, *supra*; *Wachsmuth* v. *Shaw Electric Crane Co.*, 118 Mich. 275; *Hedicke* v. *Highland*

*Springs Co.*, 185 Minn. 79 (239 N. W. 896) ; *Spain* v. *Powell* (C. C. A.), 90 Fed. (2d) 580.

Plaintiff cites *Menere* v. *Copper Range Consolidated Co.*, 169 Mich. 367, and *Nichols* v. *Railroad Co.*, 145 Mich. 643. The factual situations considered in such cases clearly distinguish them from the case at hand.

From our study of the record and of authorities bearing upon the question, we are convinced that defendant's ladder which was used by plaintiff at the time of his accident was a simple tool and that the simple-tool doctrine was properly applicable in determining defendant's negligence and the risk assumed by plaintiff. The ladder was simple in construction, and the defects, if any existed therein, could have been discovered by plaintiff without special skill or knowledge and without intricate inspection. Plaintiff had used the ladder for some time prior to the accident, and he was as well qualified as defendant to detect defects in such ladder and to judge of the probable danger of using the same.

The burden was on plaintiff to establish defendant's negligence. Applying the simple-tool doctrine to the situation in the present case, we are satisfied that plaintiff failed to show negligence on the part of defendant. There was no testimony justifying submission of the case to the jury, and the trial court was correct in entering judgment for defendant notwithstanding the jury's verdict for plaintiff.

In view of our conclusion other questions presented do not require consideration. The judgment of the trial court is affirmed. Defendant shall recover costs.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.