LESLIE C. ANDERSON, APPELLANT, v. PAUL MOSER, APPELLEE.

98 N. W. 2d 703

Filed October 23, 1959. No. 34638.

*Arthur O. Auserod* and *E. L. Vogeltanz,* for appellant.

*Frederick M. Deutsch and William I. Hagen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an appeal from a judgment sustaining a motion for summary judgment made by appellee in a personal injury action grounded on negligence.

Appellant was 36 years of age and lived with his wife and four sons 9 miles west and 2½ miles north of Elgin. He lived on a farm throughout his life except he was in the army 3 years and was engaged in office work in Scottsbluff during 1 year. He was a high school graduate and attended business college 2 years. He owns and has operated for several years a grain and livestock farm of 240 acres upon which he resides.

· The wife of appellant is a sister of the wife of appellee: The latter is a farmer and lives 3 miles west and 1 mile north of Elgin. There are 6 or 7 miles between the farms of the parties. They generally did not exchange work

on their farms but appellant was assisting appellee on the farm of the latter at the time of the accident, the subject of this action, on the afternoon of February 10, 1956, because he desired to move some hay and he asked appellant to assist him in the operation. There was an icy condition then existing and appellant had a large tractor equipped with wheel chains and was part owner of a hay truck or lowboy. Appellee had secured a tractor which was equipped with a winch or hoist. The winch, hereafter called a hoist, was home-made about 1950, was in use since that time, and was partly owned by appellant. He had used it at various times for 5 or 6 years. Appellee had also used it previously. The hoist was used to pull hay in stack onto the lowboy and thereafter the tractor of appellant pulled the loaded lowboy to its destination where the hay was removed from the lowboy by use of the hoist. The parties to this case and Wilford Arehart, another brother-in-law of appellant who also had a tractor available for use, moved three stacks of hay the day of but before the accident. One stack was for Wilford Arehart and the other two for appellee.

A universal joint was a component part of the hoist. It was a part of the means by which power was transmitted to the hoist from the tractor on which the hoist was mounted. The parts of the universal joint fitted into each other and they were fastened together or integrated by a hole through each part in which a metal pin was inserted. The pin, from some unknown cause, was partly displaced and remained in only one side of the part of the joint into which it had been placed. This was discovered by appellee when he attempted to operate the hoist to remove a stack of hay from the lowboy. Appellant and appellee laid the universal joint in a position so that the pin which was partly displaced protruded upward. Appellant was on the north of the tractor and appellee was on the south of it. They were in close proximity. They were intending to drive or

force the pin back into its proper position as a part of the universal joint. Appellant held the pin with his left hand to guide it and he then tapped it several blows with a hammer. He was not successful in restoring it to its desired place. Appellee suggested that appellant guide the pin and that appellee would strike it with the hammer. He struck the pin numerous blows while appellant was guiding it and during this operation a particle of metal, probably steel, entered, pierced, and lodged in the eye of appellant. The injury was painful, serious, and expensive.

The record is silent as to the source of the metal which injured the eye of appellant. There is no information as to any investigation to learn its source. It may have been from the hammer, the pin, or some other part of the universal joint.

Appellee had hit the pin several substantial blows, described by appellant as "pretty good licks," as he had his hand on the pin to guide it like one would hold a nail or something like that. The description of the hammer is indefinite. It is said to have been what they call a "plow hammer" or a "blacksmiths' hammer of some kind." Its weight was conjectured to be about three-fourths of a pound. The hammer was held in one of the hands of appellee while he was using it. Appellant was watching the pin and did not know how forcible the blows of the hammer were. Appellee was attempting for about a minute to drive the pin in before the injury happened to appellant and during this effort the only comment of appellant was: "Don't hit it too hard because I can't guide it then." This statement was provoked only because it was difficult to guide the pin and not because of any anticipated fear of danger or belief of existing hazard. Appellant would not assert that he did not have as much information about any hazard of hitting the pin with the hammer, under the circumstances, as appellee had on that subject. Appellant said he had no reason to know that appellee realized from

what was being done that a piece of metal might be broken, propelled through space, and cause injury. The parties were doing the same thing at the time of the accident that was being done by appellant immediately before he surrendered the hammer to appellee except appellee was not guiding the pin when appellant was striking it with the same hammer in an effort to replace the pin to its normal position. The only thing appellant thought that appellee did wrong was possibly hitting the pin too hard.

Appellant argues that he was not an employee or servant of appellee but was an invitee on the premises of appellee at the time of the accident for the advantage of appellee; that the duty owed him as an invitee by the host to shield him from harm was greater than the duty of a master toward his employee while acting within the course of his employment; and that appellee defaulted in his duty to appellant by failing to warn him of the danger and hazard of injury attendant upon the attempt to repair the universal joint in the manner in which it was done, by requesting appellant to be present and to participate in that operation, and by inducing appellant to hold and guide the pin while force was being applied to it, which appellee knew or should have known was fraught with danger of injury to appellant.

It is not necessary to explore or decide whether the status of appellant was that of an employee or an invitee of appellee. The duty of appellee towards appellant was identical if he had either status at the time of the injury. That duty was to exercise reasonable care to prevent injury to appellant. An invitee may, for the purposes of this case, be defined as a person who goes upon the premises of another by the express or implied invitation of the owner or occupant thereof on the business of the owner or occupant or for their mutual advantage. The duty of the owner or occupant is to exercise reasonable care for the safety of the invitee while on the premises. See, Morse v. Gray, 166 Neb. 557, 89 N.

W. 2d 842; Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610; 38 Am. Jur., Negligence, § 96, p. 754. Likewise, the measure of duty of an employer to an employee is generally that the former exercise reasonable care to protect the employee from injury while he is pursuing the course of his employment. Dougherty v. Pratt Institute, 244 N. Y. 111, 155 N. E. 67, states: "An owner of a building may owe as great a duty to the invited servant of another as he does to his own servant. He does not owe a greater one * * *." In this view the case of appellant does not differ whether he was at the time of the injury an invitee or an employee of appellant.

It is also claimed by appellant that the failure of appellee, under the circumstances of this case, to provide an appropriate tool which would not have exposed appellant to great danger of injury and the procedure appellee adopted and required in an attempt to restore the pin in the universal joint to its normal and functional condition, to which appellant was subjected, were negligence and the proximate cause of the injury inflicted upon him.

Liability is not created against a person when, in the prosecution of a lawful act, injury to another is caused by an accident. One may not be said to be negligent because he fails to make provision against an accident which he could not be reasonably expected to foresee. There was not in this case anything inherently dangerous in the work to be done or the attempt made to accomplish it. The repair of the universal joint was a simple task. It was a simple device. The act of restoring it was a very ordinary performance. It required only the replacing of a pin to its proper position. The pin was made for the function it performed and there is no claim that it was in any respect defective. It is not suggested that the manner in which the attempt was made by the parties to replace the pin in the joint was contrary to any standard of care practiced in

like situations or that the effort was inappropriate to accomplish what was desired. Appellant says appellee should have provided safeguards before permitting appellant to guide the pin as it was sought to be forced back into position. This suggestion is now made looking back at the unusual, unexpected, and unforeseeable mishap with the wisdom born of the event. Appellant complains of the tool which was used. It was quite an ordinary hammer with a steel head. The record yields no information that it was defective. It, as a tool, contributed not at all to the injury. A hammer has often been characterized as a simple, common tool and the most harmless of all tools. The first thing known about the hammer used in this instance is that it was in the hand of appellant and he was striking the pin with it. This was what appellee was doing, without objection from appellant, when he was injured.

The requirement that an employer must generally exercise ordinary care to furnish reasonably safe tools, appliances, and apparatus for his employee has no application to simple ones in common use, easily understood and comprehended. The facts considered in Vanderpool v. Partridge, 79 Neb. 165, 112 N. W. 318, 13 L. R. A. N. S. 668, were: Appellant, a mature man of average intelligence and knowledge, was cutting holes for joists in a brick wall. The tools furnished him by his employer were a 2-pound steel hammer and a chisel made by a blacksmith from an old rasp. The holes were 10 inches by 12 inches in size and 8 inches deep. Appellant stood on a ladder, held the chisel in front of him, and pounded it with the hammer. He was not instructed as to the manner in which the work was to be done. He had cut about 20 holes when the head of the chisel had become considerably battered; and, while pursuing the work, a chip or sliver from the end of the chisel broke off, struck the appellant in his left eye, and injured it so that it had to be removed. He claimed his employer was negligent in failing to properly in-

struct him in reference to the performance of the work, in not furnishing him proper tools, and especially because the chisel had no wooden handle or top to prevent it from chipping off. The trial court decided the case as a matter of law for the employer. This court affirmed that adjudication. Therein it is said: "The law requires masters to exercise ordinary care to provide reasonably safe tools and appliances for their servants. * * * But the foregoing rule has no application where the servant possesses ordinary intelligence and knowledge and the tools and appliances furnished are of a simple nature, easily understood, and in which defects can be readily observed by such servant."

Lynn v. Glucose Sugar Refining Co., 128 Iowa 501, 104 N. W. 577, a case cited as an authority in Vanderpool v. Partridge, *supra,* considered this situation: Plaintiff was a fireman and worked in the boiler room of the factory of defendant. Plaintiff was injured by the flying into one of his eyes of a particle of metal caused by a fellow workman breaking lump coal with a steel sledge or hammer. The sight of the eye was destroyed. The action was by the injured fireman for damages. The verdict for defendant was directed and sustained. The court said: "It is only machinery and appliances which are recognized as in their nature dangerous to employes using them, or working in proximity to them, as to which the employer owes a duty to the employe of looking out for his safety. * * * we are satisfied that the cause of the injury was not anything which it was the duty of the defendant to anticipate and prevent, if it might have been prevented in the exercise of reasonable care, but was one of those uncertain happenings as to which every one must take his chances."

In Brown v. Swift & Co., 91 Neb. 532, 136 N. W. 726, this court said: "Where a servant of ordinary intelligence and of mature years has operated a simple implement often enough to enable him to avoid being injured by it, when using it in the exercise of ordinary

care, or where the mode of operating it is so simple that such a servant can at once perceive the safe and proper way to do so, if exercising ordinary care, there is no duty resting upon the master to instruct him in that regard."

In Martin v. Highland Park Mfg. Co., 128 N. C. 264, 38 S. E. 876, 83 Am. S. R. 671, the circumstances were as follows: The employee of defendant, whose name was Webb, had the duty to keep the looms in the plant in proper operating condition. He had difficulty in inserting a new key in a shaft of one of the looms in place of a worn and defective key. A weaver who had been operating the loom was asked by Webb to hold a hammer upon the new key while he, Webb, struck upon that hammer with another in order to drive the key into the shaft, and while so doing a fragment of steel struck the weaver in the eye, injuring it. He sought to recover damages therefor. In sustaining a judgment for defendant the court said: "Tools of ordinary and everyday use, which are simple in structure, requiring no skill in handling—such as hammers and axes—not obviously defective, do not impose a liability upon employer for injuries resulting from such defects." In the opinion the court stated: "Injuries, resulting from events taking place without one's foresight or expectation, or an event which proceeds from an unknown cause or is an unusual effect of a known cause and therefore not expected, must be borne by the unfortunate sufferer, which seems to us to be the condition of the plaintiff in this case. For an injury caused by an inevitable or unavoidable accident while engaged in lawful business, there is no legal liability."

In Wachsmuth v. Shaw Electric Crane Co., 118 Mich. 275, 76 N. W. 497, plaintiff lost one of his eyes because of a piece of steel being broken by a snap-hammer being used in a riveting operation. A verdict and judgment for plaintiff were disapproved by the reviewing court which said: "This tool was a simple one.

The men using it were competent to pass upon its fitness for use. All the witnesses who saw the hammer say it was a safe one to use. * * * The testimony discloses that no steel is so perfect as not to have defects which will not be disclosed by inspection. *. * * The plaintiff failed to establish a cause of action. The court should have directed a verdict in favor of defendant."

Rule v. Giuglio, 304 Mich. 73, 7 N. W. 2d 227, 145 A. L. R. 537, states: "Under the simple-tool doctrine the employee is deemed as well qualified as the employer to examine the tool furnished by the latter, to detect defects therein and to judge the probable danger of using it, and the employer is not liable for defects in the tool or for failure to inspect it."

Danciger Oil & Refining Co. v. Free, 204 Miss. 870, 35 So. 2d 542, contains the following: "It is to be remembered that neither the running of the machinery nor its stoppage inflicted the injury on appellee * * *. It was caused proximately by the blow of a small peen hammer upon a bent pin in the link being repaired in a vise * * *. The blow of the hammer caused the unusual event of a sliver of steel flying from the pin in the link in the vice and into appellee's eye, blinding him. It was a simple operation with a simple tool, and appellants, in our judgment, were guilty of no justiciable negligence proximately injuring appellee, and hence the Chancery Court should not have awarded appellee any damages, but should have dismissed the bill."

It is said in Middleton v. National Box Co., 38 F. 2d 89: "They (cases cited) hold that in the case of simple tools the master, as a matter of law, is relieved of the ordinary duty of furnishing safe tools and appliances to the servant, and of inspecting and repairing the same when furnished. * * * In fact, as a matter of law, the employee's knowledge of simple tools is presumed to be equal to that of the master."

Halverson v. 562 West 149th St. Corp., 290 N. Y. 40, 47 N. E. 2d 685, was an action for damages by Halverson,

the respondent, whose brother was superintendent of an apartment house operated by appellant but who was not employed by appellant. Respondent was requested by his brother to hold a lighted flash lamp for a plumber who was endeavoring to dislodge a radiator bolt by the use of a chisel and a hammer, in the process of which a small piece of metal from an undisclosed source struck and seriously injured an eye of respondent. Respondent recovered a judgment which was reversed by the Court of Appeals. This language appears in the opinion: "The plaintiff's witnesses differ as to whether the plumber was 'banging' on the radiator or on the bolt. However, the evidence is clear that the 'banging' which occurred while the plumber was using the hammer and chisel had gone on uneventfully for a period of five or ten minutes when a minute piece of metal struck the plaintiff's eye causing serious injuries. The evidence does not disclose the source from which came the small piece of metal which struck the plaintiff—whether from the bolt, the radiator or from one of the tools which the plumber was using. * * * There is evidence from which the jury could have found that at the time of the accident the plaintiff was an invitee upon the defendant's premises. Considering him as such, the measure of the defendant's duty was the exercise of reasonable care toward the plaintiff who at the time of the accident was assisting the defendant's agent, the plumber, in the performance of a simple mechanical act—not one which was inherently dangerous. * * * But aside from evidence that the accident occurred, we find no proof of actionable negligence by the defendant or its agent."

Vulpis v. Bifulco, 284 App. Div. 1069, 136 N. Y. S. 2d 356, states as follows: "In an action to recover damages for personal injuries alleged to have been caused by negligence, plaintiff appeals from a judgment entered on the dismissal of the complaint at the close of his case. The evidence established that plaintiff had been requested by defendant to assist him in the prepa-

ration of certain pipes to be used by defendant in driving a well. While plaintiff was standing behind defendant, defendant, in attempting to release a chain wrench from a pipe, struck the wrench with a hammer, causing a chip to break off one of the teeth of the wrench and to fly into one of plaintiff's eyes. Judgment unanimously affirmed, with costs." See, also, Phillips v. Chicago, B. & Q. R. R. Co., 119 Neb. 182, 227 N. W. 931; Hoffman v. McKeen Motor Car Co., 95 Neb. 238, 145 N. W. 257; Frye v. Omaha & C. B. St. Ry. Co., 106 Neb. 333, 183 N. W. 567, 22 A. L. R. 607; Newbern v. Great Atlantic & Pacific Tea Co., 68 F. 2d 523, 91 A. L. R. 781; Olson v. Kem Temple, 77 N. D. 365, 43 N. W. 2d 385; Karras v. Chicago & N. W. Ry. Co., 165 Wis. 578, 162 N. W. 923, L. R. A. 1917E 677; Jones v. Lamm, 193 Va. 506, 69 S. E. 2d 430; Kilday v. Jahncke Dry Dock & Ship Repair Co., 281 F. 133; Royal Restaurant v. Ashcraft, 207 Ky. 364, 269 S. W. 305.

The denial of the request of appellant to amend his petition, made during the hearing on the motion of appellee for summary judgment, is assigned as error. This case was commenced February 7, 1958. An amended petition was filed by appellant May 19, 1958. It contained a new allegation that appellant hit the pin described in this case a few times with the hammer but the pin did not return to its normal position and appellee requested appellant to guide the pin and appellee hit it with the hammer with much more force than appellant had done. The motion for summary judgment was filed November 25, 1958, and it was heard by the court February 27, 1959. The showing of appellee in support of his motion for judgment was made. Appellant offered no showing in opposition to the motion. Arguments in reference thereto were had and counsel for appellant then in open court orally asked leave to amend the petition to set forth the evidence in the deposition of appellant "in that he requested the defendant (appellee) not to hit the pin with a

hammer with as much force as he was hitting it * * *."

The deposition of appellant, which was taken June 27, 1958, had been received in evidence in the hearing on the motion for summary judgment. The manner in which appellee hit the pin was raised by the amended answer by the allegation that he hit it with much more force than appellant had hit it. Appellant said in his deposition that he asked appellee not to hit the pin too hard because he, the appellant, could not guide it in that event and not because of any thought or anticipation of danger or hazard. If the requested amendment of the amended petition had been granted, it would have added no support to the alleged cause of action of appellant. It was within the discretion of the trial court to allow or to refuse the request of appellant to amend. The record does not show an abuse of discretion by the district court or any prejudice to appellant resulting from the refusal. Ericsson v. Streitz, 132 Neb. 692, 273 N. W. 17.

The summary judgment procedure had in this case pierced the allegations of the pleadings and established that there was no genuine issue of fact and that appellee was entitled to judgment as a matter of law. Healy v. Metropolitan Utilities Dist., 158 Neb. 151, 62 N. W. 2d 543; Clearwater Elevator Co. v. Hales, 167 Neb. 584, 94 N. W. 2d 7.

The judgment of the district court should be affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.