Edward McKAY and Margaret McKay, his wife, Plaintiffs-Appellants,

v.

**FORD MOTOR COMPANY and Michigan Commercial Contracting Corporation, Defendants-Appellees.**

No. 73–1461.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1974.

Decided June 21, 1974.

948

Rothe, Marston, Mazey, Sachs & O'Connell, by D. Charles Marston, James B. Veu Casovic, Detroit, Mich., on brief, for plaintiffs-appellants.

Alexander, Buchanan & Seavitt, Robert J. Stowe, Detroit, Mich., on brief, for Ford Motor Co.

Davidson, Gotshall, Halsey, Kohl, Nelson, Secrest & Wardle, Terrance M. Lynch, Detroit, Mich., on brief, for Michigan Commercial Contracting Corp.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

This is a diversity action to recover damages for personal injuries. Plaintiffs appeal from the denial of their motion for a new trial, after a jury verdict and judgment for defendants. This appeal presents the questions whether, under Michigan law, the "simple tool" doctrine is a defense in a negligence action brought by a business invitee alleging defendants' breach of their duty to provide reasonably safe working implements, and whether, if that doctrine applies, the district court erred in charging the jury that the ladder furnished appellant Edward McKay was a simple tool as a matter of law. Assuming, but not deciding, that the Michigan Supreme Court would apply the "simple tool" doctrine in an action brought by a business invitee, we hold that the district court's charge erroneously eliminated from the jury's consideration the factual question whether the extension ladder involved in this case is, under Michigan law, a "simple tool." Accordingly, we reverse.

Ford Motor Company (Ford) contracted with Michigan Commercial Contracting Corporation (Michigan) to install a press on Ford's premises. Edward McKay was sent by the manufacturer of the press, United States Industries, as a service representative, to assist in its installation. An extension ladder, thirty to thirty-five feet in length, had been erected on the side of the press and fastened at the top with wire. While McKay was climbing the extension ladder to perform his installation duties, the ladder suddenly collapsed and McKay fell and suffered serious injuries giving rise to this litigation. The complaint alleged that Ford and Michigan breached their duties to provide reasonably safe premises and implements for McKay.

Defendants moved for summary judgment on the grounds that the "simple tool" doctrine was a defense in an action brought by a business invitee as well as in an action brought by a servant against his master; that under Michigan law, the extension ladder was a "simple tool" as a matter of law; and that plaintiffs were thereby precluded from recovery. The district court denied the motions because it was "reluctant to apply the 'simple tool' doctrine to an invitor-invitee relationship in a diversity case where the state courts have not done so."

At trial, however, the district court charged the jury, in part, as follows:

Now, as to this particular matter, members of the jury, you will notice the Court is using the term equipment and tool, because *in law I charge you that a ladder is what the law calls a simple tool.* If that tool is simple then the person using that tool has an obligation to inspect it before he uses it. If there is nothing complicated about that tool, if one about to use that tool can observe all of its conditions prior to use, then the law does not impose upon the owner of that particular tool or equipment any obligation to warn, nor does it owe them any obligation to be sure that it is absolutely safe.

If you find there was such a complicated thing and it contained in it some inherently dangerous characteristics, then, of course, the owner of the

premises and the person who constructed or erected [it] or whose tool it was owes a duty to advise or warn against the use of any equipment or tool that in and of itself was inherently dangerous in use. (emphasis added).

Plaintiffs excepted to this charge.

Appellants contend, first, that the district court erred in applying the simple tool doctrine to a business invitee. Appellants argue that, although the simple tool doctrine has long been recognized in Michigan, it has never been applied in a case beyond the master-servant relationship. *See, e. g.*, Pawlowski v. Van Pamel, 368 Mich. 513, 118 N.W.2d 395 (1962); Rule v. Guiglio, 304 Mich. 73, 7 N.W.2d 227 (1942); Nichols v. Bush, 291 Mich. 473, 289 N.W. 219 (1939); Kelley v. Brown, 262 Mich. 356, 247 N. W. 900 (1933); Sheltrown v. Michigan Central R. Co., 245 Mich. 58, 222 N.W. 163 (1928); Toth v. Osceola, 180 Mich. 274, 146 N.W. 668 (1914); Nichols v. Pere Marquette R. Co., 145 Mich. 643, 108 N.W. 1016 (1906); Dompier v. Lewis, 131 Mich. 144, 91 N.W. 152 (1902); Wachsmuth v. Shaw Electric Co., 118 Mich. 275, 76 N.W. 497 (1898). Appellees argue, on the other hand, that the Michigan Supreme Court has not held the simple tool doctrine inapplicable to an invitor-invitee relationship; that an invitor's duties to his invitee are similar to the duties of a master to his servants, *see, e. g.*, Dougherty v. Pratt Institute, 244 N.Y. 111, 155 N.E. 67 (1926) (Cardozo, J.), *see generally* Prosser on Torts, 3d Ed., pp. 547 & 403, Restatement of Agency 2d, Ch. 14, Tit. C., Introductory Note; and that courts in other jurisdictions have held the simple tool doctrine applicable to a business invitee. Proctor v. Town Club, Inc., 105 Utah 72, 141 P.2d 156 (1943); Anderson v. Moser, 169 Neb. 134, 98 N.W.2d

703 (1959). The difficulty of predicting how the Michigan Supreme Court would resolve this undecided issue is exacerbated because the Michigan Supreme Court has occasionally explained the simple tool doctrine, at least in part, as an application of the defense of assumption of risk, *e. g.*, Rule v. Guiglio, *supra*, 304 Mich. at 82–83, 7 N.W.2d 227, but *cf.* Jacob v. City of New York, 2 Cir., 119 F.2d 300 (1941), and in 1965 the defense of assumption of risk was abolished in Michigan, except in cases involving an employment relationship between the parties or an express contractual assumption of risk. Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965).

We find it unnecessary in deciding this appeal, however, to determine whether, under Michigan law, the simple tool doctrine applies to a business invitee,[1] because we hold that, even if the doctrine is applicable, the district court's charge was erroneous and requires reversal under appellants' alternative contention that the extension ladder was not a simple tool as a matter of law in Michigan. In reaching this conclusion, we focus on that part of the charge instructing the jury that "in law I charge you that a ladder is what the law calls a simple tool."[2]

Michigan courts have often relied upon the following statement of the "simple tool" doctrine:

> We have decisions sustaining the doctrine that a master must provide safe appliances, and that he must use reasonable diligence in keeping them in repair. In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness, or the opportunities to do so, the law may require diligence upon the part of the master; *but where the ap-*

---

1. We defer a decision on this question because the Michigan Supreme Court may speak on this issue before retrial of this case and because the district court in deciding this question should consider any additional guidance from the Michigan courts.

2. The other language in the charge does not, in our view, negate this clear direction that a ladder is a simple tool as a matter of law.

*pliance is a common tool, of which the man who uses it is necessarily well qualified to judge, and who when he uses it has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool, if it is unsafe.* (emphasis added).

Wachsmuth v. Shaw Electric Crane Co., *supra,* 118 Mich. at 279, 76 N.W. at 498, quoted in Sheltrown v. Michigan Central R. Co., *supra,* 245 Mich. at 62, 222 N.W. 163 and in Rule v. Guiglio, *supra,* 304 Mich. at 81, 7 N.W.2d 227.

Rule v. Guiglio, is the leading Michigan decision applying the simple tool doctrine in a negligence action involving a defective ladder. In that case, defendant furnished plaintiff a single section of an extension ladder to use in painting defendant's house. Plaintiff was injured in a fall when the ladder broke near the lower end. The negligence action was defeated because the Michigan Supreme Court held that the ladder was "of the usual type of wooden construction consisting of two side pieces with . . . connecting rungs," 304 Mich. at 77–78, 7 N.W.2d at 228, and was, therefore, a "simple tool." Accordingly, the defendant was under no duty to inspect it. The core of the court's reasoning was that:

> From our study of the record and of authorities bearing upon the question, we are convinced that defendant's ladder which was used by plaintiff at the time of his accident was a simple tool and that the simple-tool doctrine was properly applicable in determining defendant's negligence and the risk assumed by plaintiff. The ladder was simple in construction, and the defects, if any existed therein, could have been discovered by plaintiff without special skill or knowledge and without intricate inspection.

Plaintiff had used the ladder for some time prior to the accident, and he was as well qualified as defendant to detect defects in such ladder and to judge of the probable danger of using the same. 304 Mich. at 83, 77 N.W.2d at 230.

Applying this reasoning, we find no merit in appellees' argument that Rule v. Guiglio established the broad proposition that every extension ladder is a simple tool as a matter of law in Michigan. To the contrary, the court in Rule v. Guiglio was careful to explain that plaintiff was in as good a position as defendant to observe any defect. Indeed, the plaintiff in Rule v. Guiglio was using only one section of the extension ladder at the time of the accident, and the court expressly stated: "[I]n considering whether or not the simple tool doctrine is applicable, we shall consider the ladder plaintiff was using as a single ladder from 12 to 16 feet in length." 304 Mich. at 77, 7 N.W.2d at 228.

In contrast, here we consider a fall from an extension ladder over thirty feet long, with brackets and hooks joining its two segments at a point high above the ground. Any defect in the manner in which these segments had been joined might not have been observable by McKay, even assuming the defect was visible, until he had already reached a dangerous height on the ladder.[3] Under these circumstances, the jury would not have been compelled to reach the conclusion that "plaintiff would be as well qualified as the defendant[s] to examine such ladder, to detect defects therein, and to judge the probable danger of using it." Rule v. Guiglio, *supra,* 134 Mich. at 80, 7 N.W.2d at 229. Instead, consistent with the rationale of Rule v. Guiglio, *supra,* whether the extension ladder that collapsed under McKay was a simple tool, under Michigan law, depended on questions of fact for

---

**3.** The Michigan Supreme Court's decision in *Pawlowski, supra,* which held that the extension ladder at issue in that case was a simple tool under the authority of Rule v. Guiglio, is distinguishable because in *Paw-*lowski the court stressed that the plaintiff *in fact* observed that the second rung from the bottom of the ladder was defective, and it was this observed defect that allegedly caused plaintiff's injury.

the jury's determination. In Willard v. Dore, 41 Mich.App. 508, 510, 200 N.W. 2d 369, 370 (1972), another case involving the question whether a ladder was a "simple tool", the Michigan Court of Appeals stated:

In instructing the jury, the trial judge recognized that there was conflicting testimony as to whether or not the ladder was a simple tool. He, therefore, instructed the jury that the determination of whether or not plaintiff was qualified to detect the defects in the ladder, whether or not plaintiff was qualified to judge the probable danger of the defect in using the ladder, and whether or not the defect itself was observable by ordinary observation, were all questions of fact which a jury should determine.

The district court should have charged the jury here in like manner.

Reversed and remanded for a new trial.